Margaret S. Piersol and Harriett A. Piersol Johnson, Appellees, v. Massachusetts Mutual Life Insurance Company, Appellant.

Gen. No. 34,899.

580

Heard in the first division of this court for the first district at the February term, 1931. Opinion filed March 23, 1931.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, for appellant; DON KENNETH JONES and ROBERT E. WRIGHT, of counsel.

HAFFENBERG, KOPALD & BURNS, for appellees; HARRY E. KOPALD and JOSEPH ROSENBAUM, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In an action in assumpsit upon an insurance policy issued by defendant upon the life of the father of plaintiffs, Ralph G. Piersol, issued as of July 22, 1907, for the sum of $1,000, in which plaintiffs were named beneficiaries, and upon trial by jury, a verdict was returned in favor of plaintiffs and against defendant in the sum of $1,194.05, on which the court overruling motions of

defendant for a new trial and in arrest, entered judgment. Defendant seeks a reversal of that judgment. There was a motion by defendant for a directed verdict at the close of all the evidence, which was denied.

The declaration alleged the death of the insured on or about January 2, 1927, and the defense was a denial of the death of the insured. The theory of plaintiffs is that proof of the continuous absence of the insured for seven years immediately preceding the filing of suit and proof that he was not heard from upon diligent inquiry during that time, is sufficient to raise a presumption that the insured was in fact dead prior to the filing of the suit. Defendant on the other hand contends that the facts proved are insufficient to establish that presumption and insists that the motion for an instructed verdict in favor of defendant should have been granted for that reason. It is also urged that the court erred in excluding evidence for defendant and in giving and refusing instructions.

The material facts proved are that the insured lived at Danville, Illinois, was 49 years of age and in good health when he departed from his home in Danville on August 31, 1919. He was then employed by the American Railway Express Company and had been so employed at Danville for 25 years. His daughter, plaintiff Margaret S. Piersol, was at that time also employed by that company. The insured lived with his family in Danville, the wife and mother had passed away in 1913, and the family consisted of the father, his mother, the daughter Margaret S. Piersol and her sister, who is now Harriett A. Piersol Johnson. The family life of the father appears to have been quiet and happy. The daughter Margaret Piersol testified that he was well known and well liked; that she did not remember of having ever seen any display of tem-

per on his part; that he was an affectionate father, and that she did not remember having seen any disturbance of any kind in their home. She said that after the death of the mother his disposition changed quite a little; that thereafter he didn't have much to say; that she would not say that he was sullen but he was very quiet, gave short answers, was moody, "something bothered him." After the death of the mother he didn't care as much about his personal looks as before. This began at the time of the death of the mother and continued until the time of his disappearance. He had a lot of friends in Danville and was very well known there.

Margaret Piersol further testified that she last saw her father on the morning of the Saturday before he departed. She learned of his departure from a note written by him, which she received on the Tuesday morning after his departure and in which he said he was very disgusted with everything that was going on and could not stand the way things had been any longer. He said "Goodbye."

At the time of his departure auditors of the Express Company for about ten days had been auditing the accounts of the Danville office of the Express Company. A shortage was discovered in insured's accounts. It was found that he failed to account for the amount collected on a prepaid shipment of two carloads of horses and for a shortage in money order accounts. A few days after insured left a grand jury of the United States District court for the Eastern District of Illinois returned an indictment charging him with the embezzlement of $1,742.40, the money and property of the United States which had come into his hands as agent of the American Railway Express Company. Bail was fixed at $5,000,

Thereafter Margaret Piersol worked for awhile at the office of the Express Company at Danville, after which she was transferred to Chicago at her own request, and she continued in the employment of that company for seven and a half years. The mother of the insured also came to Chicago. The other daughter, Harriett, married and took up her residence in Topeka, Kansas. The daughters both signed the proofs of death presented by the defendant company in which they stated that the place and date of death of the insured were unknown and that deceased was last heard from "on or about January 1, 1920." Neither the mother nor the daughter Harriett testified, but Margaret Piersol testified to repeated inquiries as to the whereabouts of her father among his friends in Danville without avail.

Defendant introduced the testimony of George F. Hunter, who in 1919 was special agent in charge of the American Railway Express Company. He said that on September 1, 1919, he got a long distance telephone call and went to Danville, Illinois, and started an investigation of the Express Company's accounts of the insured; that he inquired as to where the insured was and found that he had left on the night of August 31, 1919; that he checked the insured's accounts and found them to be short; that he found the shortage in the collection of the prepaid charges on two carloads of horses, and that following this investigation of the insured's account steps were taken looking towards the criminal prosecution of the insured. The witness was in Danville at the time the grand jury returned the indictment. He procured a picture of the insured, prepared a circular and caused 2,000 of these circulars to be distributed. Later 5,000 circulars of a second issue were put out, and they were distributed to every

Railway Express office in the United States and were put on bulletin boards and in railroad stations. The circulars offered a reward of $50 for information leading to the arrest and detention of the insured, who was described as a former agent of the Express Company at Danville, Illinois, who absconded from that city on August 31, 1919, with funds of the company. The circulars contained a photograph of the insured and a facsimile of his signature, stated that a United States warrant had been issued for his arrest and asked that information be telegraphed to the United States Marshal at Danville or to certain named officials of the Express company. The first issue of circulars was dated at Cincinnati, Ohio, September 6, 1919, and the second at the same place on January 15, 1923.

Hunter further testified that he attempted to locate the insured; that during the first five years he received clues to his whereabouts—about four each month; that afterwards he would get these every three to six months; that the last clue was received about the middle of September of the year of the trial of this cause. The circulars were sent to police departments of Indiana, Illinois, Wisconsin and Kentucky.

Defendant contends that the instruction asked in its favor at the close of all the evidence should have been given for several reasons. First, it is said that the evidence does not meet the requirements as to diligent inquiry among relatives and friends. It is pointed out that Margaret Piersol, daughter of insured, was the only member of the family who testified as a witness; that the other daughter, Mrs. Johnson, did not testify and that the mother of insured was not called as a witness; further, that Margaret Piersol did not testify that she ever inquired of either her mother or her sister as to the whereabouts of her father. *Modern Woodmen of America v. Graber*, 128 Ill. App.

585, and *Hitz v. Ahlgren,* 170 Ill. 60, are cited. The proof of death offered in evidence by defendant was verified by the affidavit of both plaintiffs. Therein Mrs. Johnson stated that she did not know at that time the whereabouts of the insured. There is no doubt under the authorities cited that evidence of the kind suggested would have been admissible, and it is probable that an inadvertence accounts for the failure to offer it. Its absence bears materially on the weight of the evidence and was proper matter for the jury to take into consideration; but we cannot say that because of the absence of this evidence there was no evidence on this point from which a jury could reasonably find for plaintiffs.

Again, defendant says that plaintiffs failed to prove that at the time the insured left his home he intended to return within a short time; further, that the reason for the absence of the insured was explained by the condition of his accounts and the indictment returned against him, and that no presumption of death would arise for these reasons. *Kennedy v. Modern Woodmen of America,* 243 Ill. 560, and *Gayton v. Equitable Life Assur. Society,* 245 Ill. App. 432, are cited. We have carefully examined these cases but do not understand the holding to be as defendant contends. It is true that in the *Kennedy* case there was proof tending to show that the insured at the time he disappeared intended to return in a short time, and the opinion (quite naturally) included that fact in its statement of the rule applicable, but the language used does not, in our opinion, warrant an inference that the presumption of death could not arise in any case where the insured left home without intending to return. The decisions of our Supreme Court before as well as after the *Kennedy* case, show that this interpretation of the rule has not been accepted. *Whiting v. Nicholl,* 46 Ill. 230; *Johnson*

v. *Johnson,* 114 Ill. 611; *Reedy v. Millizen,* 155 Ill. 636; *Stevenson v. Montgomery,* 263 Ill. 93; *Keystone Steel & Wire Co. v. Industrial Commission,* 289 Ill. 587; *Eddy v. Eddy,* 302 Ill. 446.

The history of the development of the rule has been stated in *Steen v. Modern Woodmen of America,* 296 Ill. 104. Its origin seems to be found in "judicial legislation" in analogy to two English statutes, one of which (1 Jac. I, c. 2) provided that the presumption of death of the spouse after an absence of seven years might be used as a defense to a prosecution for bigamy; and the other (19 Car. II, c. 6) which provided that the presumption would be entertained in this respect to holders of life leases which were dependent upon their lives. The opinion points out that the rule arose in a primitive state of society; that since that time the social aspects of our civilization have been revolutionized, and states:

". . . there is now no sound reason for continuing the rule except that it has existed for so long a time that convenience makes it the best rule to follow where no other rule is established by statute or by agreement."

In the *Gayton* case, upon which defendant relies, the court held that an instruction directing a verdict for plaintiff which ignored evidence tending to show that the cause of the absence of the insured was known and explained, was erroneous, but we cannot regard that ruling as justification for holding that it was error to submit a case to the jury where evidence of that nature had been given. The general rule is that if there is any evidence from which, taken in the light most favorable to a plaintiff, a jury could reasonably find for the plaintiff, then the case should be given to the jury. *Libby, McNeill & Libby v. Cook,* 222 Ill. 206; *Devine v. Delano,* 272 Ill. 166; *Shannon v. Night-*

*ingale,* 321 Ill. 168; *Molloy v. Chicago Rapid Transit Co.,* 335 Ill. 164.

An examination of the cases indicates that the prerequisites which would justify a presumption of death are (1) that the person whose death is in question has disappeared from his last known abode, domicile or residence; (2) that he has neither returned thereto nor communicated with those with whom he would naturally communicate if alive; (3) that inquiry has been made at the last known place of abode of the persons who would naturally hear from him without obtaining information indicating that he is alive. Out of proof of such material facts a presumption of death arises as a matter of law, but it is a rebuttable presumption which may be disproved by evidence of facts tending to show that the party presumed to be dead is alive. See Jones, Commentaries on Evidence, 2nd ed., vol. 1, secs. 285–294; 8 R. C. L. pp. 708, 709, and see page 714. We hold that the court did not err in denying the motion of defendant to instruct in its favor at the close of all the evidence.

Defendant also contends that the court erred in refusing to receive offers of testimony by defendant to the effect that the insured prior to his departure was supposed to have had some affairs with women and that a charge of seduction was about to be made against him. The evidence as offered, however, was mere hearsay and was, we think, properly excluded. *Gayton v. Equitable Life Assurance Society,* 245 Ill. App. 432, upon which defendant relies, is to that effect.

The controlling question in the case, as we see it, is raised by defendant's further contention that the court erred in giving and refusing certain instructions. Plaintiffs say that this question has not been preserved for review because defendant did not object at the time the instructions were given and refused. The instructions are in writing and exceptions by defendant

were taken thereto before the final judgment. Under the practice in the circuit court, this is sufficient. See section 74 of the Practice Act, Cahill's St. ch. 110, ¶ 74, and *Collins Ice Cream Co. v. Stephens,* 189 Ill. 200. Defendant complains in particular of plaintiff's given instruction No. 3, which is as follows:

"The jury are instructed that if, after considering all of the facts and circumstances shown by the evidence, they believe from the evidence that the facts and circumstances so shown do not rebut and overcome the presumption of death, if any, from the seven years' continued absence of the insured, Ralph G. Piersol, from his last known place of abode and residence, if he was so absent, without his having been heard from, if he wasn't heard from, by those who would most likely hear from him and without his whereabouts having been discovered after diligent search and inquiry made, if any was made, then your verdict shall be for the plaintiffs and you shall find the issues against the defendant and for the plaintiffs."

Defendant contends that this instruction is erroneous for the reason that while it directs a verdict for plaintiffs it omits therefrom the defense arising out of the fact that the absence of the insured was explained. We think the instruction is erroneous in this respect, and as it directs a verdict the error could not be cured by other instructions. The instruction is also objectionable in that it seems to assume the existence of the presumption that the insured is dead. This was the issue which the jury was required to decide, but the instruction says that the jury should find for plaintiffs if they believed from the evidence that the facts and circumstances shown did not rebut and overcome that presumption. While the words, "if any" are used, the effect of the instruction is to ignore the principal defense of defendant and to tell the jury that the evidence established a presumption of death and that

the verdict should be against defendant unless that presumption was rebutted. The instruction is confusing and, we think, clearly erroneous.

The fourth instruction given at the request of plaintiffs also in effect directs a verdict and omits therefrom the defense that the insured's absence is explained.

A similar instruction was condemned in *Gayton v. Equitable Life Assur. Society,* 245 Ill. App. 432. In that case the court said that the instruction was argumentative and erroneous because it told the jury that even though the insured had some reason for leaving home, nevertheless if he had been absent for seven years and if his family and relatives had been unable to find him during that time, the jury was authorized to find that he was dead. There, as here, there was evidence tending to show that the insured left because he was about to be accused of a crime, and the court said:

"The instruction entirely deprives the defendant of the defense that the insured was a criminal; that he had a strong motive for disappearing and that he had planned to escape the consequences of his crime."

It was urged there (as plaintiff insists here) that a similar instruction was held not to be erroneous in *Policemen's Benevolent Ass'n v. Ryce,* 213 Ill. 9. The court in that case did not hold the instruction free from error but on the contrary that the error was cured by other instructions given.

Defendant insists that the court erred in refusing its requested instruction No. 5. That instruction, too, directs a verdict and includes as one of the necessary elements that the insured must have left home "with the expectation of returning thereto within a short time." Such a finding was not essential to a recovery by plaintiffs, and for that reason we think the court did not err in refusing defendant's request to give the instruction.

This case is exceedingly close upon the facts, and in such case it is important that the instructions to the jury be accurate and clear.

For the error in giving plaintiffs' instructions Nos. 3 and .4, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

O'CONNOR and McSURELY, JJ., concur.