Stella Jendresak, Administratrix of Estate of Zalewski, Deceased, Appellee, v. Metropolitan Life Insurance Company, Appellant.

Gen. No. 43,525.

Opinion filed December 31, 1946.  Modified and rehearing denied January 22, 1947.  Released for publication January 22, 1947.

ECKERT & PETERSON, of Chicago, for appellant; OWEN RALL, WILLIAM A. CANNON and LEWIS E. BULKELEY, JR., of counsel.

RICHARD J. COONEY and ARTHUR J. J. WELSH, both of Chicago, for appellee.

Mr. Presiding Justice Sullivan delivered the opinion of the court.

This action was brought by plaintiff, Stella Jendresak as administratrix of the Estate of Stanley Zalweski, deceased, to recover from the defendant, Metropolitan Life Insurance Company, the face value of two policies of insurance issued by said company on the life of Stanley Zalewski. The case was tried before the court and a jury. The jury returned a verdict in favor of plaintiff for $570.28, judgment was entered thereon against defendant and the latter appeals.

Plaintiff's statement of claim alleged in substance that she was the administratrix of the estate of Stanley Zalewski, deceased; that defendant issued two policies of insurance on the life of Zalewski, one on June 13, 1927 for $264 and the other on September 1, 1927 for $500; that the proceeds of said policies were payable to her as such administratrix; that "the said Stanley Zalewski left his home and residence June 9, 1928 and has been continually absent therefrom for a period of seven years . . . without any intelligence being received by members of his family, relatives and neighbors within said period or at any time thereafter"; and that the defendant was presumed to have died on June 9, 1935 while his policies "were still in force and effect."

Defendant's statement of defense denied the material allegations of plaintiff's statement of claim pertaining to the presumption of Zalewski's death and set forth as an affirmative defense that on April 28, 1937 Bernice Zalewski, the wife of the insured, surrendered the policies involved herein for the cash surrender value thereof, amounting to $193.72, and accepted said amount in full payment of all claims under such policies.

Plaintiff, Stella Jendresak, was appointed administratrix of the estate of the insured. The proceeds of the policies in question on the life of Zalewski were payable upon his death to his "Executor or Administrator" unless same were paid under the "Facility of Payment" provision of the policies, which provision reads as follows:

"The Company may make any payment or grant any non-forfeiture privilege provided herein to the Insured, husband or wife, or any relative by blood or connection by marriage of the Insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the Insured, or for his or her burial; and the production of a receipt signed by either of said persons, or of other proof of such payment or grant of such privilege to either of them, shall be conclusive evidence that all claims under this Policy have been satisfied."

Plaintiff testified that she was a stepdaughter of the insured; that he married her mother on March 19, 1927; that his five minor children by a prior marriage, two daughters and three sons, and her mother's youngest child by a prior marriage, a son about 15 years old, lived with her mother and stepfather after their marriage; that she was married and had a home of her own at the time her mother married her stepfather and that she visited their home about twice a week; that "they seemed to get along all right as husband and wife"; that "he was a stone engraver or cutter" and worked regularly; that her stepfather did not return home from work on June 9, 1928 and that she went to her mother's home that night; that she and her mother notified the police; that shortly thereafter she moved into her mother's home and lived there for nine years subsequent to June 9, 1928; that during that time neither she nor her mother

heard anything from her stepfather; that "she visited a few undertakers, every time we have seen that some- one was killed . . . I never seen him any- wheres"; that she saw "a notice of the Juvenile Court" in one of the daily newspapers that his chil- dren were going to be offered for adoption if he did not return home; and that thereafter she inquired among her friends and relatives but none of them had heard anything from him.

Plaintiff testified on cross-examination that after Zalewski's disappearance his daughters Stella and Helen were cared for by the "Catholic Home Bureau" until "they were of age"; that while Stella and Helen were in the "Catholic Home" she visited them every Sunday; that she knew that after Stella and Helen left this "Catholic Home" they made an effort to find their father but they told her that "they had not seen him"; that she had not seen either of the daughters of the insured for about five years prior to the trial but that about a year before the trial she had a tele- phone conversation with Stella in which the latter told her that she had not seen her father since his disap- pearance; that she (plaintiff) and her stepfather's son Charles went to the police station several times to inquire if the police had received any information concerning the whereabouts of the insured and were advised that they had not; and that Charles accom- panied her on several occasions to the county morgue and various undertaking establishments.

Plaintiff's brother, Anthony Skarupinski, testified that he lived with his mother and stepfather after they were married; that "they got along very good"; that he was about 15 years old when his stepfather left home on June 9, 1928; and that he never saw him thereafter.

The following communication was received in evi- dence on plaintiff's behalf:

"Metropolitan Life Insurance Company
New York City
February 5, 1941.

In re: Policy 205746-M Stanley Zalewski—
Disappearance

Walter A. Witkowski, Esq.
Attorney at Law
1437 West Chicago Avenue
Chicago
Illinois

Dear Sir:

Supplementing our communication of January 27th, in order for your client [wife of the insured] to obtain the death claim value of these policies, it is necessary that we be furnished with an official transcript of the record of the insured's actual death and said death to have occurred prior to May 5, 1937.

Yours truly,
John B. Northrop,
Manager of Claim Division."

Bernice Zalewski, the wife of the insured, continued to pay the premiums on the policies for almost nine years after his disappearance. On April 28, 1937 she turned the policies over to Rufus A. Nowicki who was then assistant manager of one of defendant's Chicago offices and he gave her a receipt for them, which read in part: "Both policies to be sent to H. O. for cash surrender. (Disappearance of Stanley Zalewski)."

Nowicki testified on defendant's behalf that on the same day that he received the policies from the wife of the insured she executed a form of "Receipt and Release" as to each policy, which recited that in consideration of the payment to her by defendant of the amount specified therein she "released and discharged" the defendant "of and from all manner of

claims and demands whatsoever, arising under or by reason of the above numbered policy or policies''; that a few days thereafter he delivered to the insured's wife defendant's check for $211.67; and that she did not hesitate about accepting the check ''when everything was explained to her . . . the explanation was according to the letter or information the home office had sent us to explain to her, that this was the amount of the cash value; however, if she could at any time prove the death of Mr. Zalewski it took precedence before the cash value, she would be entitled to and the Company would be glad to pay the remaining amount up to the full claim of the two policies.''

Charles Grady testified that he was one of defendant's inspectors; that in January 1942 he called upon Stella Zalewski (daughter of the insured) in the course of his investigation as to Zalewski's whereabouts; that she told him that she and her sister Helen had seen their father in June 1931 and talked to him for a few minutes; that he showed her defendant's Exhibit 5 and she admitted that it was a letter written by her to defendant in response to its letter (defendant's Exhibit 7) to her; and that he also exhibited another letter (defendant's Exhibit 6) to her and that she identified it as having been written by her sister Helen to defendant. Defendant's Exhibits 5, 6 and 7 for identification were offered in evidence but were excluded on plaintiff's objection.

Bernice Zalewski, the wife of the insured, died before this action was instituted. The three sons of the insured were in the army or navy at the time of the trial and neither Stella nor Helen Zalewski, the daughters of the insured, appeared as witnesses at the trial.

On the trial plaintiff did not contest defendant's right to pay the wife of the insured the cash surrender value of the policies and she allowed it credit

for the amount of such payment. Thus, it will be noted that the amount of the judgment represents the difference between the face value of the policies and the cash surrender value thereof which had been paid to Bernice Zalewski in 1937.

It is first contended that "defendant had the right to exercise its option to pay to insured's wife the cash surrender value of the policies, pursuant to the facility of payment clauses thereof"; that the "exercise, by defendant, of the option under the Facility of Payment Clause is a complete defense"; and that "in an action at law a release under seal by a person of his cause of action is a complete bar unless its execution is shown to have been obtained by fraud."

In our opinion there is not the slightest merit in any of these contentions, when they are considered in the light of the record in this case. Defendant's own evidence clearly shows that when it paid the wife of the insured the cash surrender value of the policies it did not even pretend to do so in the exercise of any option under the Facility of Payment Clause. At the time the cash surrender value was paid to Bernice Zalewski, defendant refused to acknowledge her husband's presumptive death and to allow her claim for the death benefit. The cash surrender value was paid to the wife of the insured as such and the payment of the death benefit was expressly reserved by the defendant. Certainly the defendant cannot consistently claim that it exercised any option under the Facility of Payment Clause in the face of the testimony of Nowicki. As has been seen, he testified that when he delivered the check to Bernice Zalewski for the cash surrender value of the policies he told her that he had instructions from the home office of the defendant to explain to her that she was being paid only "the amount of the cash value" and that "if she could at any time prove the death of Mr. Zalewski it

took precedence before the cash value, she would be entitled to and the Company would be glad to pay the remaining amount up to the full claim of the two policies.'' At the time Nowicki made this statement to the wife of the insured, the defendant had already received at its home office the forms of ''Receipt and Release'' theretofore executed by her. It will be particularly noted that Nowicki made the foregoing explanation to Bernice Zalewski upon the advice of the home office of the defendant.

It will also be recalled that nearly four years after Nowicki procured the execution of the forms of ''Receipt and Release'' by Bernice Zalewski and delivered the check to her for the cash surrender value of the policies, the manager of the claim division of defendant wrote a letter from its home office to an attorney representing her, in which he said, ''. . . in order for your client to obtain the death claim value of these policies, it is necessary that we be furnished with an official transcript of the record of the insured's actual death and said death to have occurred prior to May 5, 1937.'' This letter shows just as conclusively as does Nowicki's testimony that the defendant did not exercise any option afforded it under the Facility of Payment Clause when it paid the cash surrender value of the policies to Mrs. Zalewski. According to both Nowicki and the manager of defendant's claim division, the payment to her of the cash surrender value of the policies was not intended to release and discharge defendant from the payment of the death benefit.

It will be noted that the manager of defendant's claim division stated in his letter that proof of the *actual* death of the insured would be required. It is only necessary to state in this connection that the defendant could not require proof of the actual death of the insured, when proof of the necessary

facts to raise the presumption of his death was all that was required under the law and the policies.

There is no force to defendant's contention that the forms of "Receipt and Release" executed by the wife of the insured constitute a complete bar to this action, because they were releases under seal of her cause of action. From what has already been said, it clearly appears that these instruments were never intended by defendant or Bernice Zalewski to be anything more than mere receipts for the cash surrender value of the policies and defendant is estopped from claiming that they had any other legal effect. Furthermore, while defendant would have been protected under the Facility of Payment Clause if it had paid the death benefit to Bernice Zalewski, she, as the wife of the insured, had no right of action under the policies as to the death benefit which she could release.

In view of Nowicki's testimony and the letter of the manager of its claim division defendant is forced to concede in its reply brief that said instruments may be treated as mere receipts given by Bernice Zalewski for the cash surrender value of the policies but it then makes the assertion that as to the plaintiff herein they must be considered as releases which discharged defendant from liability to pay the death benefits provided for in the policies. The mere statement of defendant's contention in this regard demonstrates its unsoundness. Since these instruments were originally intended to be receipts only, it is difficult to appreciate how they could possibly be held to be legally effective for any other purpose. Since defendant did not pay the death benefit to Bernice Zalewski or to any other facility of payment beneficiary, it is liable for the payment of same to plaintiff as administratrix of Zalewski's estate if she made the requisite proof upon the trial of his presumptive death.

Defendant next contends that "plaintiff utterly failed to comply with the prerequisites which would justify the presumption of death."

"The rule in this State is, that the absence of a person for seven years from his usual place of abode or resort, and of whom no account can be given and from whom no intelligence has been received within that time, raises the presumption that he is dead." *Hitz v. Ahlgren,* 170 Ill. 60, 63. This "is a rebuttable presumption which may be disproved by evidence of facts tending to show that the party presumed to be dead is alive." *Piersol v. Massachusetts Mut. Life Ins. Co.,* 260 Ill. App. 578, 587. There can be no question but that plaintiff's evidence, heretofore set forth in considerable detail, made out at least a prima facie case, inasmuch as it tended to prove the material facts necessary to raise the presumption of death.

The only evidence submitted to the jury in defendant's behalf to overcome the presumption of Zalewski's death was the testimony of Charles Grady, one of its inspectors, that in January 1942 in the course of his investigation as to the whereabouts of Zalewski he called upon the latter's daughter Stella and she told him that she and her sister Helen had seen their father in June 1931 and talked to him for a few minutes.

Whether Grady's hearsay testimony as to what Stella told him in 1942 was sufficient to rebut the presumption of the death of the insured was a question of fact for the jury to determine and that question was decided adversely to the defendant by the jury's verdict, which was unquestionably warranted by plaintiff's evidence.

Defendant also contends that "the court erred in rejecting written statements by decedent's daughters that they had seen him within the seven-year period involved." The written statements referred to are

contained in two letters which defendant's witness Grady testified were identified by Stella Zalewski in January 1942. These two letters purported to have been written by Stella and Helen Zalewski on September 8, 1936 and September 10, 1936 respectively, supposedly in reply to a letter written by defendant to Stella. Defendant's letter requested information as to when Stella had last seen her father alive and as to his "present" whereabouts. The letter claimed to have been received by defendant from Stella was typewritten. This letter did not bear her signature but the name "Stella Zalewski" was typed beneath the body thereof. The pertinent portion of said letter is as follows:

"In 1931 I saw him [her father] and spoke to him for few minutes. At that time I had reasons to be afraid of him and left him as soon as I possible could."

The letter claimed to have been written by Helen was in longhand and bears the signature "Helen Zalewski." This letter reads in part as follows:

"I saw him in 1931 summer when we were on a picnic. Standing by some drug store. I can't say it was him, but he really looked like him and my sister Stella saw him at the same place and time. She forgot to mention it when she wrote to you.

"The other times my sister told me she saw him on her way going to Edison to the dime store. We were in St. Hedwig's at the time."

■ One of the material facts which plaintiff was required to prove to raise the presumption of the death of the insured was that diligent inquiry had been made as to his whereabouts and that such inquiry was unavailing. As a matter of necessity and public policy the rule has been established that, where inquiries have been unavailing concerning the whereabouts of a person who has disappeared and been continuously absent from his home for seven years,

the fact that such inquiries were unavailing may be proved by hearsay evidence as an exception to the rule excluding evidence of that character. The reason for the rule is that inquiries which are unavailing are not capable of proof otherwise than by hearsay evidence.

■ Defendant insists that, since the letters of Stella and Helen Zalewski were received by it as the result of its inquiry concerning the whereabouts of their father, the information contained in such letters, regardless of whether it was true or false, was admissible in evidence. Realizing the necessity of showing the authenticity of the letters, defendant attempted to do so by the hearsay testimony of Grady that Stella told him that she and her sister had written them. In support of its contention that the trial court erred in excluding the letters defendant cites *Kennedy v. Modern Woodmen of America,* 243 Ill. 560, and *Lichtenhan v. Prudential Ins. Co.,* 191 Ill. App. 412. We have carefully examined these cases and find that they have no application to the question presented here as to the admissibility of the letters under consideration.

The admission of the hearsay evidence contained in these letters on Grady's hearsay testimony would have deprived plaintiff of her right to cross-examine Stella and Helen as to whether they had written the letters and as to the truth of the facts set forth therein and it might well have been developed, if they were subjected to cross-examination, that neither of them had written the letters or seen their father in 1931 or at any other time since he disappeared. That this is true is clearly indicated by the conflicting statements contained in the letters.

Defendant does not claim that its inquiry as to the whereabouts of Zalewski was unavailing but rather that it was of avail in that it resulted in its receipt of information that the insured was alive. That being

so, neither the aforementioned exception to the hearsay rule nor the reason for such exception to said rule apply to the hearsay evidence contained in the letters which purported to have been written by Zalewski's daughters. If Stella and Helen Zalewski had written the letters in question, that fact was susceptible of proof by their testimony to that effect. If they had seen their father alive during the seven-year period involved herein, that fact was also susceptible of proof by their testimony.

What we have said as to the hearsay evidence contained in the aforesaid letters applies with equal force to the hearsay testimony of a former employee of the defendant that Helen Zalewski told him that she had seen her father in 1931 and the hearsay testimony of Nowicki that Bernice Zalewski told him in 1937 that Stella and Helen had told her that they had seen their father.

All of the foregoing hearsay evidence was properly excluded by the trial court and the hearsay testimony of Grady, which was the only evidence admitted in defendant's behalf, that Stella told him that she and Helen had seen their father in 1931 and that they had written the aforesaid letters would unquestionably have also been excluded if plaintiff had interposed an objection to its admission.

Every exception to the hearsay rule with which we are familiar is predicated upon necessity and public policy and the reason for such exceptions is that hearsay evidence is the best evidence obtainable and that material facts would not otherwise be capable of proof. Where material facts are susceptible of proof by persons who are alive and are claimed to have personal knowledge thereof, it is never permissible to resort to hearsay evidence to prove such facts.

Something is said in defendant's brief about Stella and Helen being unavailable as witnesses when

the case was tried. Even though it were properly shown that they were unavailable, that fact would not furnish any legitimate basis for the admission of the hearsay evidence offered by defendant. Evidence pertaining to the unavailability of a witness is admissible solely for the purpose of accounting for the absence of a material witness. Whether Stella and Helen were available or not at the time of the trial, it was not permissible for defendant to present in lieu of their testimony the hearsay evidence heretofore referred to.

It is finally urged that the trial court erred in refusing to give two instructions tendered by defendant. It is sufficient to state in answer to this contention that even though these instructions might with propriety have been given and the court did err in refusing to give them, such error was harmless, since, as heretofore shown, there was no merit in any defense presented or attempted to be presented by defendant to plaintiff's claim.

For the reasons stated herein the judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

Friend and Scanlan, JJ., concur.