THE PEOPLE ex rel. BRENDA BANKS, Plaintiff-Appellant, v. LAWRENCE LEON ROBINSON, Defendant-Appellee.

First District (4th Division) No. 60967

Opinion filed December 10, 1975.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, and Michael F. Baccash, Assistant State's Attorneys, of counsel), for appellant.

No brief filed for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is a paternity action brought by the State on the relation of Brenda Banks who alleged that a child was born to her out of wedlock on June 20, 1972, and that the father was defendant, Lawrence Leon Robinson. After a bench trial the court entered judgment in favor of defendant and plaintiff appeals.

The issue presented on appeal is whether a hearsay statement is admissible when there is no showing that the alleged declarant is unavailable or that the surrounding circumstances are such as would naturally lead to a trustworthy recitation of the event by the witness. Defendant-appellee filed no brief in this court and we would be justified in revers-

ing *pro forma* for failure to comply with Supreme Court rules. But from an examination of the record, we have decided to review the matter on its merits.

As is the case with almost every contested trial of this character, the evidence is in conflict. Relator testified that both she and defendant worked at Bordens Ice Cream Company. She met him in July of 1971 and went out with him twice a week between July and October of that year. During that period she had sexual relations with defendant on four separate occasions. She stated that the last sexual relation occurred in October after she had learned that she was pregnant. She testified that defendant asked her if she had missed her period and that she told him she had. They discussed the possibility of an abortion and defendant agreed to share the cost. Relator further testified that between July and October, she did not have sexual relations with anyone else.

Defendant testified in his own behalf and stated that he met relator at a party in July 1971. Later that evening he had sexual relations with her in her apartment. He stated that except while working at Bordens he was never in her company again. He denied that he had intercourse with her more than once, that he asked her whether she had her period, and that he had any knowledge of possible plans for an abortion. He further testified that he first became aware of her accusation when he was summoned to court in 1973.

The instant controversy arises out of the testimony of Lawrence Brown who was called as a defense witness. Brown was asked if he knew one Jerry Briscoll. He responded that he did, and identified Briscoll who was in the courtroom. Brown testified that in the latter part of 1972 relator came to the plant with her baby. He stated that he observed the two of them in the company of Briscoll and a couple other coworkers. The following courtroom colloquy then took place:

"Defendant's Counsel: Now, who was holding the baby?

Lawrence Brown: Miss Banks was holding the baby.

Q. Was there any conversation when Miss Banks, Mr. Briscoll and the baby came over there?

A. Well, I heard a conversation, as far as Mr. Briscoll was concerned, as to come and see the baby.

Q. What did Mr. Briscoll say?

A. He said come and see my baby.

Plaintiff's Counsel: Objection, hearsay.

Defendant's Counsel: He said come and see my baby?"

The court overruled plaintiff's objection.

Thereafter, relator was recalled on rebuttal and counsel asked whether she had sexual intercourse with anyone other than defendant between

August and September of 1971. The court sustained an objection on the ground that the question had been previously asked and answered. The State made an offer of proof that relator would testify she did not have intercourse with Briscoll during the months in question. The court sustained an objection to the offer. After hearing argument of counsel, the court found the defendant not guilty.

The record establishes that relator never stated she had sexual relations with anyone other than defendant during the crucial period. Nor did she ever assert that anyone but the defendant was the father. We believe it is fair to say that the court relied on the testimony of Lawrence Brown in making its substantive finding as to whether defendant sired the child. Accordingly, we must now determine whether a witness not a party to the action can be permitted to testify to a statement made by another person who is present in court and who was not called to testify despite his availability.

Without a doubt Lawrence Brown's testimony that he heard Briscoll say "come and see my baby" constitutes hearsay evidence in its most classic form. It is what one person said he heard another say and is offered for the purpose of proving the matter asserted therein. Numerous cases hold that such evidence is inadmissible. We have no intention to deviate from this ancient and well-grounded rule.

■■ The rationale behind the exclusion of hearsay evidence is indeed clear. Its probative force depends upon the competency and credibility of some person other than the witness. Thus, it has been said that "[h]earsay evidence is excluded because of the probable sources of inaccuracy and fabrication which lie beneath the bare assertions of a witness, and because the credibility of such assertions cannot be tested in the glaring light of cross-examination." (*Naylor v. Gronkowski*, 9 Ill.App.3d 302, 307, 292 N.E.2d 227, 230.) In the case at bar the admission of the hearsay evidence deprived relator of her right to confront and cross-examine Briscoll, assuming in fact that he would testify that he was the father of the child. This is a basic right and not a technical rule. (*Novicki v. Department of Finance*, 373 Ill. 342.) In our opinion there was not the slightest merit in the receipt or consideration of this evidence.

■■ Of course, there are well-established exceptions to the hearsay rule. But each exception with which we are familiar is predicated upon necessity or public policy considerations, and the reason for such exception is that hearsay evidence is the best obtainable evidence of material facts otherwise not capable of proof. In any event, where material facts are susceptible of proof by persons who are available and claim to have personal knowledge thereof, it is never permissible to resort to hearsay

evidence to prove such facts. (*Jendresak v. Metropolitan Life Insurance Co.*, 330 Ill.App. 157, 171, 70 N.E.2d 863, 870.) This is precisely the situation in the case at bar.

For the foregoing reasons the judgment is reversed and the cause is remanded for a new trial consistent with the views expressed herein.

Reversed and remanded.

DIERINGER, P. J., and ADESKO, J., concur.