THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SHANNON COWPER, Defendant-Appellant.

Second District   No. 2—85—0642

Opinion filed July 22, 1986.—Rehearing denied September 11, 1986.

G. Joseph Weller and Kim M. Dewitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Kenneth R. Boyle, of State's Attorneys Appellate Prosecutor, of Springfield, and William L. Browers, of State's Attorneys Appellate Prosecutor, of Elgin, and Andrea Becker, of Broadview, for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Shannon Cowper, was indicted in the circuit court of Kane County for the February 25, 1985, residential burglary of the dwelling of Anthony Medina located at 303 Cherry Street in Elgin. (Ill. Rev. Stat. 1985, ch. 38, par. 19—3(a).) He was convicted in a jury trial and sentenced to 15 years in the Department of Corrections. He challenges his conviction on the basis of the alleged error committed by the court in limiting redirect examination of him which was designed to bring out the totality of an oral statement on which he was impeached, and in admitting hearsay testimony concerning the absence of a listing in three different sources for the person upon which defendant's defense of mistake of fact was based when the three sources themselves were not produced in court.

The record shows Medina's next-door neighbor, Roy Mitchell, observed a man walk up to the rear door and then up the stairs to the second floor of the Medina dwelling about 8:20 a.m. on February 25, 1985. He came back down the stairs to the first floor and knocked on the door. No one responded to the knock; the man took something out of his cap, wrapped it around his hand and broke the pane of glass. The man reached inside, opened the door and entered the house. The neighbor's wife called the police.

The police responded within minutes. Two of the officers went to the rear of the house, and two stayed in the front; one of the officers, Bradish, positioned himself behind a tree to the east of the front door. Officer Rathjen, who had gone to the back of the house, testified the back door with the broken glass was closed and that he saw a movement of the window shade behind the glass. He approached the door, identified himself, and ordered everyone out of the house. He received no response. About 30 seconds later, he heard a commotion at the front of the house, and heard that a person had been taken into custody. Officer Bradish testified that a man, later identified as the defendant, stuck his head out the front door and looked to the west. He then came out of the door in a "crouched over" position and sort of jogged toward where Bradish was positioned. Bradish told the defendant to "freeze" and defendant said: "I wasn't in the house, the door was open." The defendant was arrested, and a screwdriver, a roll of masking tape, a wadded-up piece of masking tape and a piece of glass were taken from him. These items were placed on the bumper of the police van. The glass recovered from the defendant was subsequently broken when the defendant kicked at the items after being told they were being seized as evidence.

The owner of the house, Medina, testified that since he left the

house that morning his stereo had been moved, the medicine chest and china-cabinet doors were opened, a bedroom light was turned on, and a rear bedroom window was opened.

Elgin Detective McCurtain testified he heard a radio dispatch concerning a burglary in progress and responded with other patrol units. He observed the defendant in the custody of Officer Bradish, and he entered the residence. No one else was found therein, and no one else was arrested. The owner was contacted, and he identified the items that had been disturbed. McCurtain testified he did not know a person named Omar Taylor and, over objection, that he attempted to locate him by checking Elgin police computer records, the Elgin phone book, and the Elgin city directory. He was unable to find Omar Taylor listed in any of those sources.

On cross-examination, McCurtain stated that the inquiries could not have uncovered a new resident to the town, a person without a phone, or a person who had had no contact with the Elgin police department.

The defendant testified about 7:30 a.m. on February 25, he left his girlfriend's house to buy cigarettes at Dunkin' Donuts. On the way he met Omar Taylor, whom he knew from playing basketball at Elgin High School. Taylor asked him for help moving some of his belongings because his "old lady" had kicked him out. The defendant agreed and accompanied Taylor to 303 Cherry Street; defendant had never been there before. Taylor said he did not have a key. The defendant knocked, but no one answered. Taylor told the defendant to break the window because he had to get his things. The defendant had a screw driver and masking tape because he used them when he paints. He last painted the Friday before, February 22, at his girlfriend's mother's house. He put tape on the window at the bottom, down in the corner. He hit the window and pulled off the tape and glass and stuck it in his pocket.

Once inside, Taylor went into the rear bedroom, and the defendant testified he waited for him on the front porch. Soon, the defendant heard the sound of walkie-talkies and then saw police cars in front of the house. He looked for Taylor but could not find him. Defendant was arrested in the front yard of the house as he was leaving. The defendant stated he never touched the stereo or the cabinet doors, and kicked the bumper of the police van because he was "mad [he] was going to go to jail."

He was taken to the police station, where he had a conversation with Detective McCurtain in part concerning 303 Cherry Street.

On cross-examination, the defendant denied he went up the stairs

to the second floor of the house, or that he wrapped tape around his hand or wadded it up. He said Omar told him how to put the tape on the window. He said he did not try to get out of the house by the back door after the police arrived, and that the door was open. He stated he really did not look at anything or notice anything in the house, and that he just looked for a place to sit down. He said he got frightened when he saw the police and that he got frightened every time he saw the police; it was just natural fear of the police. He denied telling the police that he was not in the house, and denied he inquired about the reason for the seizure of the items found in his jacket. He admitted he kicked the bumper where the evidence was. He acknowledged that he did not tell the police about Omar Taylor at the scene of his arrest because "he couldn't even think of that then." He stated he played basketball with Omar Taylor a number of times. He did not know where he was living or working, and he described him as 5 feet 10 inches to 5 feet 11 inches tall, medium skinned. When asked if he knew how to get in touch with him, the defendant stated: "Well, he is in the neighborhood." He did not know what happened to Omar Taylor that day. Defendant thought Detective McCurtain had given him his rights before he talked with him about the incident, but he did not remember any of the specific admonitions. He remembered talking to McCurtain, but he denied he told him he tried to run out the back door when he saw the police. He further denied he then tried to get out the window in the bedroom, and that he finally ran out the front door. In response to the prosecutor's questioning, the defendant stated Omar Taylor did tell him to go into the house, and that there is an Omar Taylor.

On redirect, defense counsel asked defendant if he told McCurtain about Omar Taylor during the interview at the police station. The State objected on the basis such testimony would constitute improper admission of a prior consistent statement. Defendant argued his rehabilitation should not be limited, and that he should be allowed to counter the inference created during the State's cross-examination that he did not tell the police about Omar Taylor at the scene with the totality of the statement he made to Detective McCurtain, which included the fact that he told McCurtain about Omar Taylor. The State argued the extent of the defendant's rehabilitation should be limited to only those points included in the statement on which he was impeached, and that he was impeached only as to whether he tried to leave the house by the back door or the rear bedroom window. The court sustained the State's objection.

In rebuttal, the State called Detective McCurtain, who testified

that in the course of his oral statement, the defendant told him that he first tried to run out the back door of the house, saw the police, then tried to escape through the bedroom window and finally ran out the front door.

On cross-examination, McCurtain stated that the defendant was given *Miranda* warnings, but he was not provided with a written waiver form. The statement was transcribed from McCurtain's handwritten notes, which were destroyed after they were transcribed. The interview was not tape recorded. The jury was then instructed on the law, including the defense of mistake of fact, and it returned a guilty verdict against the defendant.

■ The defendant first contends it was error for the court to sustain the State's objection to redirect examination of him regarding his statement to Detective McCurtain about Omar Taylor. Defendant maintains the prosecutor's cross-examination of him created the inference that because he did not inform the police at the time of his arrest about Omar Taylor's role in the offense, that his defense was fabricated for trial. Thus, he asserts, testimony as to the totality of his statement to Detective McCurtain should have been allowed under the completeness doctrine and in the interest of fundamental fairness in order to restore his credibility to the jury.

The State submits that the alleged statement of the defendant was inadmissible as a prior consistent statement and further, that the completeness doctrine is inapplicable where the inference that the defense had been fabricated arose from the circumstances attending his arrest, not his subsequent statement to the police. The State is correct in its assertion that defendant's testimony that he told Detective McCurtain about Omar Taylor during his oral statement made approximately two hours after his arrest was a prior consistent statement. Generally, evidence of statements made prior to trial for the purpose of corroborating testimony at trial is inadmissible. (*People v. Emerson* (1983), 97 Ill. 2d 487, 501.) Prior consistent statements are admissible under an exception which provides:

> " '[W]here it is charged that his story is a recent fabrication or that he had some motive for testifying falsely, proof that he gave a similar account of the transaction *when the motive did not exist or before the effect of the account could be foreseen* is admissible.' " (Emphasis added.) 97 Ill. 2d 487, 501, citing *Lyon v. Oliver* (1925), 316 Ill. 292, 303. See also *People v. Clark* (1972), 52 Ill. 2d 374.

In the instant cause it may be said that the defendant's motive to fabricate existed at the time he made the statement to Detective Mc-

Curtain. Consequently, the defendant's proposed testimony did not fall within this exception to the admission of prior consistent statements.

The defendant's argument for the application of the completeness doctrine likewise fails to provide a basis for admission of this evidence. The completeness doctrine permits an opposing party to introduce the remainder of an utterance or writing, or so much as is required of the statement or writing, to explain, qualify, or otherwise shed light on the meaning of the evidence already received. (*Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543; *People v. Provo* (1951), 409 Ill. 63.) The mere mention of a conversation or statement does not entitle the opponent to bring out its content (*People v. Crawford* (1962), 23 Ill. 2d 605); the admission of any prior statement under the completeness rule is subject to the proscriptions of relevance and materiality (*People v. Andersch* (1982), 107 Ill. App. 3d 810, 811). That is, the remainder of the conversation or statement to be admitted must concern " 'what was said on the *same subject at the same time.* [Citations.]' " (Emphasis in original.) (*People v. DePoy* (1968), 40 Ill. 2d 433, 438.) "[T]he opposing party may introduce the remainder or so much thereof as is required to place that part originally offered in proper context so that a correct and true meaning is conveyed to the jury. [Citations.]" *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 556.

The prosecutor's cross-examination was designed to impeach the defendant in several different ways: first, that he made a prior inconsistent statement at the time of his arrest; second, that he did not offer his Omar Taylor defense at the time when it would have been most natural for him to do so, *i.e.,* at the scene when it became clear that the officers were going to arrest him; and third, that he told McCurtain that he first tried to get out the back door and then the window before he exited out the front door. Officer Bradish testified that when he confronted the defendant coming out of the house in the front, defendant looked up at him and said: "I wasn't in the house, the door was open." Bradish ordered him down on the ground, and placed him under arrest. Defendant's testimony at trial was manifestly inconsistent with that prior statement, since he admitted he broke into the house, but explained he did so at Omar Taylor's request because he thought he was helping retrieve some of Omar's possessions kept therein. Defendant denied at trial that he made the prior inconsistent statement about not being in the house, but he admitted he did not mention Omar at the scene, stating: "I couldn't even think of that then." Defendant also denied he told McCurtain he tried to get out either the back door or the bedroom door before fi-

nally exiting through the front door.

■ A witness may be impeached by proof that he made a statement outside of court contradicting his in-court testimony, or that he failed to speak under circumstances where it would have been natural to relate the matter testified to in court if true. (E. Cleary & M. Graham, Illinois Evidence sec. 613.1, at 427 (4th ed. 1984).) Accordingly, it was proper for the prosecutor to impeach the defendant on cross-examination in the manner in which he did. Generally, when a witness has been impeached by a prior inconsistent statement, the witness is entitled to an opportunity to explain or qualify the statement and show why it was made. (*People v. Hicks* (1963), 28 Ill. 2d 457, 462; *People v. Hanson* (1980), 83 Ill. App. 3d 1108.) All of the prior statements may be brought out to qualify or explain the inconsistency and rehabilitate the witness. *People v. Hicks* (1963), 28 Ill. 2d 457, 463; *People v. Ruffin* (1950), 406 Ill. 437, 445.

Insofar as the completeness doctrine is concerned, the State correctly notes the defendant's statement during the interview at the police station was separate from the statement made at the time of his arrest, and he was impeached on the basis of the statement at the police station only as to whether he told McCurtain that he first tried to get out the back door and then the bedroom window. Consequently, under the completeness doctrine, only testimony qualifying or shedding light on those same two topics or placing the part originally offered in its proper context would have been admissible.

■ Although the evidence was not admissible under the completeness doctrine and did not fall within the exception to the inadmissibility of prior consistent statements, we nevertheless find it was admissible under the rules relating to impeachment by a prior inconsistent statement. As noted above, a witness may be impeached by proof he failed to speak under circumstances when it would have been natural to relate the matters testified to in court if true. Defendant here was impeached by his failure to mention Omar Taylor at the time of his arrest. We believe he should have been allowed to be rehabilitated by evidence that he did mention Omar Taylor during his questioning by the police. Although neither party cites the case, this same result was reached in *People v. Morrow* (1982), 104 Ill. App. 3d 995, 1000-02.

In *Morrow,* the defendant and a codefendant, Jones, were convicted of rape. Defendant Morrow contended the court erred in admitting evidence of a prior consistent statement of a witness, Juanita Bell, one of the victims. On direct examination, Bell said Jones threatened to rob her, but defendant advised against it, and Bell testified Jones did not rob her or the other victim. On cross-examination by

Morrow, Bell testified she did get one of her necklaces taken away from her. Morrow then attempted to impeach Bell on the basis she said nothing about the robbery to the first officer who responded to Bell's house, Officer Brown, and that she said nothing to the preliminary-hearing judge either. On redirect examination, the prosecutor asked Bell if she told Investigator Grunhard that a necklace had been taken, and she replied in the affirmative. Grunhard was allowed to confirm Bell's statement over defense objection.

Although the court agreed Bell's statement was not admissible under the exception to the general prohibition against prior consistent statements, it nevertheless found her testimony was admissible in order to rebut her impeachment by her prior silence.

> "When a witness is impeached by a prior inconsistent statement, the witness is entitled to an opportunity to explain or qualify the statement and show why it was made. (*People v. Gammons* (1970), 130 Ill. App. 2d 120, 123, 264 N.E.2d 866.) It follows that if a witness is impeached by prior silence, she should be given an opportunity to explain her silence. One such explanation could be testimony to the effect that, 'I said nothing to Brown but I did report it to Grunhard.' On this basis, Bell's statement on redirect was admissible." *People v. Morrow* (1982), 104 Ill. App. 3d 995, 1002.

Although it is unclear in *Morrow* exactly when Bell told Grunhard her necklace had been taken, there is reference to an interview of Bell by Grunhard at the hospital to which she was taken. We believe the similarity of the issue and facts here dictates a finding that the defendant should have been permitted to testify he told McCurtain about Omar Taylor in order to rebut the inference raised by the State that he fabricated his defense for trial. See also *People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 569.

■ We do not, however, consider the erroneous exclusion of this evidence amounted to an abuse of discretion warranting reversal. Even if the defendant were allowed to testify he told McCurtain about Omar Taylor, the totality of his statement to the police which was consistent with his trial testimony would not similarly have been admissible—as defendant had argued at trial—save for those portions on which he had been impeached and on which he had some rehabilitative evidence to offer. *People v. Andersch* (1982), 107 Ill. App. 3d 810, 820.

■ The scope of redirect examination is within the discretion of the trial court, and the court's ruling will not be reversed unless it is a clear abuse of discretion resulting in manifest prejudice to the

defendant. (*People v. Washington* (1984), 127 Ill. App. 3d 365, 382.) We do not perceive any clear abuse of the court's discretion, nor any manifest prejudice to the defendant because of it. The jury could reasonably have inferred that the defendant told McCurtain about Omar Taylor, since McCurtain was questioned at trial about his knowledge of such person. We note particularly that there was direct evidence of the neighbor next door to the dwelling in question who testified he saw only one man break the window of the door and enter. There was also evidence, controverted by the defendant, that he made a statement to Officer Bradish at the scene which was inconsistent with his trial testimony; to wit: "I wasn't in the house, the door was open." During trial, explaining his silence concerning Omar Taylor at the scene, the defendant stated only, "I couldn't even think of that then." There was evidence that upon being taken into custody, the defendant kicked at the bumper on which the items of evidence taken from him had been placed. As to why he did so, he stated: "Because I was mad. I was going to go to jail." We note also the jury was properly instructed on the defendant's affirmative defense of mistake of fact. Considering the totality of the evidence, we believe the jury's rejection of that defense was reasonable and that its guilty verdict against the defendant was not the result of the error identified here. A judgment of conviction will not be reversed merely because error was committed at trial unless it appears that the finding of guilt may have resulted from such error. *People v. Lee* (1984), 128 Ill. App. 3d 774.

■ Defendant next contends it was error for the court to allow Detective McCurtain to testify, over hearsay objection, concerning the lack of a listing for Omar Taylor in police computer records, the Elgin phone directory, and the Elgin city directory. He argues such testimony was not admissible under the business-records exception to the hearsay rule, since the physical documents were never submitted to the court, nor did the State show it was impossible to do so. Further, he argues, although the police computer records might fall within the business-records exception, the State failed to establish a proper foundation. He contends this improper attack on the existence of Omar Taylor and, therefore, on his defense of mistake of fact, caused him immeasurable prejudice.

The State asserts the testimony in question did not constitute hearsay or, if it did, it was admissible under a special exception to the hearsay rule. Moreover, it points out defendant waived the lack of foundation for the police computer records by specifically objecting at trial on hearsay grounds. As to this latter point, we agree that defendant's specific objection to the evidence on the grounds of hear-

say operates as a waiver of all grounds not specified in the objection. *People v. Baker* (1983), 114 Ill. App. 3d 803.

■ As to whether the evidence in question was hearsay, we agree the evidence was admissible as nonhearsay in that it was evidence of the inability of Detective McCurtain to find a listing for Omar Taylor after diligent search, which, in turn, provided circumstantial evidence of his nonexistence. (McCormick, Evidence sec. 249, at 594 (2d ed. 1972).) Telephone and city directories themselves fall within a special exception to the hearsay rule, and are admissible as substantive evidence of the truth of assertions they contain. (McCormick, Evidence sec. 321, at 744 (2d ed. 1972).) We note defense counsel thoroughly cross-examined McCurtain, lessening the effect of this circumstantial evidence by establishing the telephone directory does not include persons who have no phone or who wish to remain unlisted, that the city directory does not include persons who are not residents or who have recently moved to Elgin, and the police computer records would not have a record of persons who had not had contact with the police. McCurtain was available for cross-examination, too, as to the extent of his diligence in seeking a listing for Omar Taylor, and as to the method and manner in which his search for such listing was conducted. *Cf. People v. McClinton* (1978), 59 Ill. App. 3d 168, 175 (where officer did not personally check weapon through firearms registration section to ascertain ownership status).

■ As argued by the State, inquiries which are unavailing may be proved by hearsay evidence as an exception to the rule where such inquiries are not capable of proof otherwise. (*Jendresak v. Metropolitan Life Insurance Co.* (1946), 330 Ill. App. 157, 159.) Finally, we agree that comment on the absence of Omar Taylor, the only person who could have corroborated the defendant's defense of mistake of fact, was not improper since it was the defendant who interjected Omar Taylor as the basis of his defense, and his failure to bring in evidence within his control is a circumstance which is entitled to some weight in the minds of the jury. *People v. Plantinga* (1985), 132 Ill. App. 3d 512, 519, citing *People v. Williams* (1968), 40 Ill. 2d 522, *cert. denied* (1969), 393 U.S. 1123, 22 L. Ed. 2d 129, 89 S. Ct. 1004.

For these reasons, the judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

REINHARD and WOODWARD, JJ., concur.