THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER ANTCZAK, Defendant-Appellant.

Second District   No. 2—91—0289

Opinion filed October 20, 1993.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, Stephen E. Norris, Rebecca Sanders, and Kendra Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Following a jury trial in the circuit court of Winnebago County, defendant, Christopher Antczak, was convicted of a single count of residential burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—3 (now 720 ILCS 5/19—3 (West 1992))). Defendant filed a petition electing treatment for addiction or alcoholism pursuant to sections 10—101 and 10—102 of the Illinois Alcoholism and Other Drug Dependency Act (20 ILCS 305/10—101, 10—102 (West 1992)) and was sentenced to a five-year term of probation under the supervision of a designated treatment program.

On the morning of June 25, 1989, Daniel VanSickle returned to his house after spending the night with his girlfriend and discovered that the house had been ransacked. A VCR, a stereo receiver and a camera were missing. According to VanSickle, a warranty card for the camera, which he had completed and left in the camera case, was

also missing. In addition, a five-gallon water bottle in the bedroom, which VanSickle used to collect pocket change, had been emptied. The water bottle had previously been approximately half full. A fingerprint found on the water bottle was identified as belonging to defendant. VanSickle testified that to his knowledge defendant had never been in his home and defendant did not have permission to be in VanSickle's home on June 24 or June 25, 1989.

The State also presented the testimony of 15-year-old N.H. N.H. was the daughter of VanSickle's girlfriend, and in May or June 1989, she and defendant (who was then 17 years old) began dating. During the summer of 1989 defendant and N.H. broke off and resumed their romantic relationship several times. The relationship ended late in summer or early in fall of 1989. N.H. testified that at some point during that summer, while she was at defendant's father's house, defendant told her that he "did Dan's house." N.H. understood that comment to mean that defendant had burglarized Daniel VanSickle's house. Defendant also threw a piece of paper at N.H. which N.H. observed to be a warranty for a camera. The warranty was signed by VanSickle.

During cross-examination, the following exchange occurred regarding defendant's alleged admission to N.H.:

"Q. So when [Assistant State's Attorney] Weinhardt here led you into remembering a conversation in the latter part of June, you don't know if it was in the latter part of June or July or August, do you?

A. I know it was before he went to jail.

Q. Well, gee, you must have gone right away to the police with this?

A. No, I didn't.

Q. You never went to the police, did you?

A. No.

Q. You never talked to the prosecutors before this week, right.

A. I don't know who I talked to in January, but I talked to someone very briefly.

Q. That's interesting. Yesterday when I talked with you you said that you talked with your mother in December about it and nobody since then until this week. Now you remember a January conversation.

A. I don't know who it was that I talked to."

N.H. admitted that she had not mentioned her conversation with defendant to anyone until after her relationship with defendant had

ended. On redirect examination, N.H. testified that in December 1989 she told her mother about the conversation.

Over defendant's objection, the State was permitted to present the testimony of James Gesmer, a former Winnebago County assistant State's Attorney who had been assigned to defendant's prosecution during January 1990. He testified that on January 16 he had a telephone conversation with a person who identified herself as N.H. She stated that defendant admitted to her that he and Robin Wynn had burglarized the VanSickle residence and had taken a VCR and stereo equipment. She also told Gesmer that defendant had shown her warranty papers for a camera taken in the burglary. N.H. indicated that the conversation with defendant took place during the summer of 1989.

During cross-examination, defense counsel questioned N.H. regarding her feelings about breaking off her relationship with defendant. N.H. denied that she was "pretty upset about the last break-up." She also denied crying about their breakup in front of her friend Nikki Triplett. She admitted that after breaking off her relationship with defendant she began dating defendant's cousin, Duane White, but denied that she had done so to "get back" at defendant. N.H.'s testimony was partially contradicted by Nikki Triplett, who testified for the defense that after N.H.'s relationship with defendant ended N.H. cried about it to Triplett and expressed some anger toward defendant.

The defense attempted to establish that N.H. had been involved in some type of a sexual relationship with VanSickle, or that VanSickle had made sexual advances toward her. Nikki Triplett testified that at some time during the preceding year N.H. told her that VanSickle would "make her drinks and touch her and it would make her feel funny." Linda White, defendant's aunt, testified that during early summer 1989 she had conversations with N.H. during which N.H. told her that she was afraid to go home because her mother's boyfriend was having a sexual relationship with her, and she was afraid to tell her mother. Defendant also testified that he was aware that VanSickle had made sexual advances toward N.H. During cross-examination N.H. denied having a sexual relationship with VanSickle and denied telling Triplett, White or defendant that she had.

Tammy White, defendant's cousin, testified that during the week before trial she encountered N.H. in school and N.H. told her that she was "trying to put [defendant] away as much as I can for what he did to me." N.H. did not explain what defendant had done to her. Linda White's boyfriend, Richard Lanning, testified that about a week and a

half before trial he spoke to N.H. while she was working at an Orange Julius restaurant in a shopping mall. Lanning asked her if she had seen defendant and she replied, "I don't see that son of a bitch." Lanning asked why N.H. was angry with defendant, and she responded that she thought "he told my mom about the boyfriend." During cross-examination, N.H. admitted having spoken with White and Lanning, but denied making the statements later reported by those witnesses during defendant's case in chief.

Defendant testified on his own behalf. He denied any involvement in the burglary to VanSickle's residence and denied ever telling N.H. that he "did Dan's house." He testified, however, that on one occasion he went to VanSickle's house with N.H., Nikki Triplett and Robin Wynn. VanSickle was not home at the time. N.H. had a key to the house and told defendant that it was all right for them to be in the house. While Triplett and Wynn waited outside, defendant and N.H. went into the bedroom and kissed for awhile. Afterward, they decided to buy cigarettes. N.H. handed defendant the bottle containing Van-Sickle's pocket change, and they took $2 in coins from the bottle, which they used to buy cigarettes at a gas station after leaving the house. Triplett and Wynn gave similar accounts of the trip to VanSickle's house. Both recalled that defendant and N.H. had $2 in change when they left the house and that they went to a gas station to buy cigarettes. There were some discrepancies as to whether N.H. used the key to open a sliding glass door, or whether she entered the house through another door and opened the sliding door from inside the house.

N.H. testified that she had never been in VanSickle's house with defendant and had never been in the house when VanSickle was not present. She also testified that she never had a key to the house. Van-Sickle testified that neither N.H. nor her mother had a key to his house.

Defendant contends that the trial court committed reversible error by permitting James Gesmer to testify to N.H.'s statements during a conversation in January 1990 (approximately 11 months before trial) in which N.H. reported defendant's admission to her of involvement in the burglary of VanSickle's residence. Defendant argues that N.H. was motivated to lie at the time she spoke with Gesmer and her statements were therefore inadmissible under the principles governing the use of prior consistent statements. According to defendant, Gesmer's testimony unduly bolstered N.H.'s credibility, by repetition of her account of her conversation with defendant.

■ Our supreme court recently set forth the principles regarding the admissibility of prior consistent statements:

"A witness may not be corroborated on direct examination by proof of prior statements consistent with his testimony. (*People v. Powell* (1973), 53 Ill. 2d 465, 472.) *** However, prior consistent statements are admissible to rebut a charge or an inference that the witness is motivated to testify falsely *or that his testimony is of recent fabrication,* and such evidence is admissible to show that he told the same story before the motive came into existence *or before the time of the alleged fabrication. People v. Clark* (1972), 52 Ill. 2d 374, 389; *People v. Titone* (1986), 115 Ill. 2d 413, 423; see also *People v. Harris* (1988), 123 Ill. 2d 113, 139; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.14 (5th ed. 1990)." (Emphasis added.) *People v. Williams* (1991), 147 Ill. 2d 173, 227.

See also *People v. Patterson* (1992), 154 Ill. 2d 414, 453 ("in order for this exception to apply, the trial testimony sought to be corroborated must be charged as recently fabricated or the witness must have a motive for testifying falsely"); *People v. Hayes* (1990), 139 Ill. 2d 89, 138 ("An exception to [rule that a witness may not testify as to statements made out of court to corroborate testimony at trial] is recognized where the prior consistent statement is introduced to rebut a charge or inference that the witness is motivated to testify falsely or that his in-court testimony is of recent fabrication"); *People v. Park* (1993), 245 Ill. App. 3d 994, 1004 ("prior consistent statements are admissible to rebut a charge or inference that the witness is motivated to testify falsely or has recently fabricated her in-court testimony").

Defendant claims N.H. was motivated to testify falsely because she was angry at defendant over the breakup of their relationship. Because the same motive to falsify existed at the time N.H. spoke with James Gesmer in January 1990, defendant argues that her statements to Gesmer were therefore inadmissible.

■ It is clear that when the prior statement is offered to rebut a charge or inference of a motive to falsify, the statement must have been made before the motive came into existence. (See, *e.g., People v. Emerson* (1983), 97 Ill. 2d 487, 501.) Moreover, "[t]he party seeking to introduce the prior consistent statement has the burden of establishing that the statement predates the alleged creation of the improper influence, motive, or recent fabrication." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.14 (Supp. 1993), citing *People v. Deavers* (1991), 220 Ill. App. 3d 1057.

The record establishes, however, that the State's objective in offering Gesmer's testimony was not to rebut the charge that N.H.'s testimony was the product of her animosity toward the defendant. Instead, the State introduced Gesmer's testimony in response to defense counsel's line of questioning during cross-examination of N.H. insinuating that N.H. had come forward with her account of her conversation with defendant only shortly before trial. With regard to N.H.'s alleged conversation with defendant, defense counsel stated, "[y]ou never talked to the prosecutors before this week, right." Thus, as the State argued in the trial court, defendant raised an inference that N.H.'s testimony was of recent fabrication. The State sought to show that, indeed, N.H. had told the same story to the State's Attorney's office 11 months earlier. We must therefore determine whether N.H.'s statements were admissible for that purpose notwithstanding the possibility that she may have had a motive to speak falsely when she talked with Gesmer.

Unfortunately, the case law on the subject of prior consistent statements has not been entirely uniform in stating the applicable test, and variations in the language courts have used leave some uncertainty as to the significance of a witness' motives when a prior consistent statement is offered to rebut a general charge of recent fabrication which is not premised on a specific motive. One group of cases appears to view "motive to falsify" and "recent fabrication" as separate exceptions. Thus, *People v. Williams* (1991), 147 Ill. 2d 173, states that a prior consistent statement may be admitted "to show that [the witness] told the same story before the motive came into existence *or* before the time of the alleged fabrication" as the case may be. (Emphasis added.) 147 Ill. 2d at 227; see also *People v. Shum* (1987), 117 Ill. 2d 317, 340-41 ("Exceptions *** allow the admission of prior consistent statements to rebut a charge or inference that (1) the witness is motivated to testify falsely or (2) that the in-court testimony is a recent fabrication").

On the other hand, the test for admissibility of prior consistent statements has sometimes been phrased in a manner which suggests that the absence of a motive to falsify at the time of the prior statement must be shown regardless of whether the evidence is offered to rebut a charge of a motive to testify falsely or is offered to rebut a charge of recent fabrication. For instance, in *People v. Henderson* (1990), 142 Ill. 2d 258, 310, it was stated that "[e]vidence of a prior consistent statement is inadmissible hearsay unless it has been suggested that a witness recently fabricated testimony or has a motive to testify falsely *and* the prior statement was made before the motive

arose." (Emphasis added.) Similarly, in *People v. Ashford* (1988), 121 Ill. 2d 55, 71, the court indicated that "proof of a prior consistent statement by a witness is admissible to rebut a charge or inference of recent fabrication or motive to testify falsely, *provided the statement is made before the alleged motive to fabricate existed.*" (Emphasis added.) See also *People v. Harris* (1988), 123 Ill. 2d 113, 139 ("A narrow exception to [rule prohibiting corroboration with prior consistent statements] has been created where it is charged that the testimony is recently fabricated or that the witness has some motive for testifying falsely. Then a prior consistent statement may be admitted, but only if made before the motive to fabricate arose"); *People v. Gacho* (1988), 122 Ill. 2d 221, 250 ("The defendant *** argues that a prior consistent statement is admissible only to rebut a charge that at trial the witness is motivated to testify falsely or that the testimony is a recent fabrication. Evidence of the prior consistent statement is admissible to show that it was made before the motive came into existence"); *cf. People v. Emerson* (1983), 97 Ill. 2d 487, 501, quoting *Lyon v. Oliver* (1925), 316 Ill. 292, 303 (for proposition that " 'where it is charged that [a witness'] story is a recent fabrication or that he had some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist or before the effect of the account could be foreseen is admissible' "); *People v. Finley* (1988), 178 Ill. App. 3d 301, 310.

We believe the view espoused in *Williams, Shum* and other cases, essentially treating charges of recent fabrication and charges of a motive to falsify as separate exceptions, is correct. See also *People v. Gray* (1991), 209 Ill. App. 3d 407, 418 ("if the following *two exceptions* exist, prior consistent statements may be admitted to rebut (1) a recent charge of fabrication; or (2) a contention that the witness has a positive motive to testify falsely. [Citations.] *In the second exception,* it must be shown that the presently imputed motive did not exist at the time of the prior statement" (emphasis added)); accord *People v. Ollins* (1992), 235 Ill. App. 3d 158, 165 ("it is well established that evidence of a statement made by a witness out of court but which is consistent with his trial testimony is admissible where the witness is charged with recent fabrication or his opponent raises an inference that a motive to testify falsely exists which did not exist at the time that the prior statement was made"); *People v. Chandler* (1992), 231 Ill. App. 3d 110, 114-15 ("A prior consistent statement may be admitted to rebut an inference that the testimony is a recent fabrication or an inference that the witness has a motive to testify falsely, but this exception applies only if the prior inconsistent [*sic*] statement was

made before the time of the alleged fabrication *or* the motive to lie came into existence" (emphasis added)); *People v. Goebel* (1987), 161 Ill. App. 3d 113, 120 ("To invoke the exception successfully it must be shown that the witness told the same story prior to the existence of the motive *or* prior to the time of the alleged fabrication" (emphasis added)); *People v. Andino* (1981), 99 Ill. App. 3d 952, 955 ("a prior consistent statement offered to rebut a charge of recent fabrication is admissible only if the declarant told the same story before the motive came into existence *or* before the time of the alleged fabrication" (emphasis added)).

In the case at bar, defendant essentially attacked N.H.'s credibility on two distinct bases. First defendant suggested that N.H.'s testimony was the product of her hostility toward defendant for breaking off their relationship.[1] However, as noted above, defendant also sought to persuade the jury that N.H.'s testimony was suspect because she waited essentially until the eve of trial to come forward. This theory of impeachment could be viewed as independently viable without proof of any particular motive. The jury could have rejected the charge that well over a year after their breakup N.H. was still angry enough at defendant to commit perjury. But even if the jury rejected this alleged motive, it might still have doubted N.H.'s testimony simply because N.H. had not come forward earlier. We believe N.H.'s statements to Gesmer were admissible to rehabilitate N.H. against this general charge of recent fabrication.

Our decision in *People v. Cowper* (1986), 145 Ill. App. 3d 1074, supports this conclusion, albeit indirectly. In *Cowper*, the defendant was charged with residential burglary after being apprehended while the offense was apparently in progress. He testified that he had been deceived into participating in the offense by an acquaintance, Omar Taylor, who asked the defendant to help him move some personal belongings. Taylor told the defendant that his "old lady" had kicked him out. Thus the defendant's defense was that he thought Taylor had permission to take property from the house, although Taylor did not have a key, and they had to break a window to get inside the house. On cross-examination, the defendant admitted that at the time he was

---

[1]We note that during his case in chief defendant also developed the theory that N.H. was angry at defendant because she believed he had revealed her sexual relationship with VanSickle to her mother. The State argues that we should focus on this alleged motive in determining the admissibility of N.H.'s statements. We disagree. At the time of Gesmer's testimony, this theory of impeachment had been discussed outside the jury's presence, but was not yet before the jury.

arrested, he did not mention Taylor to the police. On redirect examination, the defendant was barred from testifying that when later interviewed by a detective, he did, in fact, relate Taylor's involvement.

In discussing the admissibility of prior consistent statements, we did not distinguish, as we do now, between statements offered to rebut a general charge of recent fabrication, and those offered in response to the charge of a specific motive to falsify. Quoting *People v. Emerson* (1983), 97 Ill. 2d 487, 501, we stated that to be admissible, a prior consistent statement must have been made " *'when the motive did not exist or before the effect of the account could be foreseen.'* " (Emphasis in original.) (*Cowper*, 145 Ill. App. 3d at 1079, quoting *Emerson*, 97 Ill. 2d at 501; see also *People v. King* (2d Dist. 1988), 165 Ill. App. 3d 464, 467 ("a prior consistent statement is admissible to rebut a charge of recent fabrication when the statement was made prior to the time the motive to fabricate arose"). But see *People v. Goebel* (2d Dist. 1987), 161 Ill. App. 3d 113, 120 ("To invoke the exception successfully it must be shown that the witness told the same story prior to the existence of the motive *or prior to the time of the alleged fabrication*" (emphasis added)).) However, we found a different basis for admitting the testimony:

> "[W]e *** find [the testimony] was admissible under the rules relating to impeachment by a prior inconsistent statement. *** [A] witness may be impeached by proof he failed to speak under circumstances when it would have been natural to relate the matters testified to in court if true. Defendant here was impeached by his failure to mention Omar Taylor at the time of his arrest. We believe he should have been allowed to be rehabilitated by evidence that he did mention Omar Taylor during his questioning by the police." *Cowper*, 145 Ill. App. 3d at 1081.

Similarly, here, N.H. was impeached by defense counsel's suggestion that she never came forward with evidence implicating defendant until shortly before trial. The State was entitled to rehabilitate N.H. by clarifying that she had in fact spoken with an assistant State's Attorney about 11 months before trial. The case at bar is not completely analogous to *Cowper*. In *Cowper*, the defendant's statement to the detective would appear to have been contemporaneous with his arrest. Here, N.H. did not contact the State's Attorney's office until six to seven months after the alleged conversation with defendant. However, defense counsel specifically emphasized the notion that N.H. concocted her story on the eve of trial, and it was appropriate for the jury to hear evidence that, concocted or not, N.H. told her story much

earlier. The amount of time N.H. waited before coming forward may have influenced the jury's view of N.H.'s credibility. We therefore conclude that evidence of N.H.'s statement to James Gesmer was admissible to rebut the inference created by the defense that N.H. fabricated her testimony shortly before trial.

Defendant alternatively argues that, even if N.H.'s statements were admissible, the trial court erred in allowing Gesmer to testify that N.H. had implicated Robin Wynn in the burglary of the VanSickle residence. Defendant also notes that N.H.'s statements to Gesmer differed from her trial testimony in that she told Gesmer that defendant mentioned taking a VCR and stereo equipment. At trial, N.H. testified that defendant did not discuss what was taken from VanSickle's house. Defendant cites *People v. Henricks* (1975), 32 Ill. App. 3d 49, for the proposition that where a prior consistent statement is offered for purposes of corroboration, it is unnecessary to show the details of the statement. *Henricks* did not involve the principles regarding the admissibility of prior consistent statements. Rather the *Henricks* court expounded upon the scope of evidence admissible under the "prompt complaint" doctrine, which applies only in prosecutions for certain classes of sex offenses, and the principles articulated in *Henricks* have no application outside that context. We conclude that the trial court did not err in permitting Gesmer to testify to the content of his conversation with N.H.

In connection with Gesmer's testimony, the jury was instructed as follows:

> "THE COURT: Members of the Jury, the testimony of this witness has been admitted for a limited purpose.
>
> It may be considered with all the other facts and circumstances in the case *only as it may or may not bear upon the believability of the witness, [N.H.]*
>
> It is not to be considered by you as independent proof that the defendant made the admissions to the crime alleged." (Emphasis added.)

While defendant questions the effectiveness of this limiting instruction, we believe it adequately informed the jury of the purpose for which Gesmer's testimony was admitted and prevented the jury from improperly considering extraneous matters in N.H.'s statements to Gesmer. Defendant argues that the instruction was inadequate because it did not advise the jury not to consider N.H.'s statements as evidence of Robin Wynn's guilt. However, the trial court's statement that Gesmer's testimony be considered "only as it may or may not

bear upon the believability of [N.H.]" sufficiently addresses that concern.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

BOWMAN and COLWELL, JJ., concur.