THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES MULLEN, Defendant-Appellant.

First District (1st Division)   No. 1—98—1555

Opinion filed May 22, 2000.—Rehearing denied June 27, 2000.

Michael J. Pelletier and Bonnie Kim, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Georgia A. Buglass, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant, Charles Mullen, and codefendant, Louis Townsend, were charged with first degree murder, aggravated vehicular hijacking,

vehicular invasion and armed violence. After a bench trial, both defendants were found guilty of first degree murder and not guilty of all other charges. Herein we address only the appeal of Mullen. Mullen was sentenced to 25 years in the Illinois Department of Corrections. Mullen argues on appeal that the evidence was insufficient to prove him guilty beyond a reasonable doubt, that the trial court improperly admitted evidence of prior consistent statements, and that the trial court improperly excluded testimony of a defense witness. For the following reasons, we affirm.

## FACTS

Venus Norfleet testified that on July 16, 1996 she saw a group of 10 to 15 men, including defendant, running after a pickup truck traveling east on Ohio Street. She went back into her apartment building, looked out the window and saw that the truck had collided with her car. She then saw the men drag the victim, Hugo Cariaga, out of the truck. She saw a man in the crowd pull a tool from the victim's tool belt and begin hitting the victim on the head while the others kicked and hit him. As she watched the beating, she noticed her neighbor Ernell Freeman also watching from in front of his home. She dialed 911, reporting the beating. She saw defendant standing over the victim while codefendant Townsend kicked the victim and another man hit the victim with a baseball bat. As the victim was beaten, one of the men in the crowd got into the victim's truck and drove away. Defendant and Townsend, together with the rest of the group, walked away. Norfleet denied that she told her neighbor Rosalind Russell that she did not recognize any of the offenders.

Jose Meraz, the victim's coworker, testified that he had been driving in front of Cariaga when he saw Cariaga pulled from the truck and beaten. Meraz left to get help, and upon returning, the victim was lying facedown on the ground. Paramedics and the police arrived on the scene. Meraz was unable to identify any of the offenders.

Ernell Freeman testified he was in front of his home on Ohio Street when he saw a group, including defendant, running down the street chasing a pickup truck. The truck passed Freeman and hit a parked car. Freeman saw Sam Quinn pounding on the back window and recognized Quinn, the defendant and the others from the neighborhood. They were members of the Gangster Disciples. Freeman stood 10 to 20 feet away and saw the group pull Cariaga out of the truck and begin to hit, kick and beat him. Freeman testified the beating went on for three to four minutes and he watched Mullen, codefendant Townsend and others kick Cariaga "a bunch" of times. The group of young men walked away together leaving Cariaga lying on

the ground, and a black male drove away in Cariaga's truck. Freeman testified that on May 19, 1997, in the presence of defendant's cousin, Geraldine Mullen, defendant's attorney took a statement from him. Freeman, who could not read or write, signed the statement denying that either defendant or codefendant beat the victim. Freeman also testified the signed statement was not true, he did not know why he signed it and he was afraid of Mullen, Mullen's family and Mullen's gang affiliation.

Freeman also admitted that he drank a "few" 40-ounce bottles of beer before he witnessed the victim being beaten. He further stated that when defense counsel read the recantation statement to him out loud he agreed with the statement. On redirect, Freeman acknowledged that he saw codefendant Townsend and defendant chasing the victim's truck. He also acknowledged that, when he testified before the grand jury, he stated that both defendant and codefendant Townsend kicked the victim.

Detective Whalen, within hours of the beating, spoke to Venus Norfleet. She named one of the offenders and told Detective Whalen that Freeman was a witness. Detective Whalen spoke to Freeman a few hours after the beating on July 17, 1996. Freeman recognized codefendant Townsend's picture among the photos he was shown. He also named defendant as one of the offenders. The next day, July 18, 1996, both Freeman and Norfleet went to the police station and identified defendant. On July 19, 1996, Freeman and Norfleet returned to the police station and identified codefendant Townsend in a lineup. According to the medical examiner, the victim died as a result of injuries consistent with being struck multiple times with a blunt object and consistent with being kicked multiple times.

Defendant's grandmother, Odeal Mullen, testified that defendant was on her front porch at 637 North Christiana with his girlfriend when the beating occurred and that a short time later Sam Quinn, Mrs. Mullen's other grandson, ran into the house with blood on his hands and told her that he had beaten up a man on Spaulding. Anna Mae Mayes, Mrs. Mullen's neighbor, also testified that defendant was sitting on the front porch with his girlfriend; however, she could not recall what day or week it had been when she saw defendant. Miriam Towns, defendant's girlfriend, testified that she saw a group of boys, including Sam Quinn, standing on the street corner as she walked to defendant's house. She stayed on the front porch with defendant and after about 15 minutes she saw the group of boys running down the street but she did not see a pickup truck.

Latasha Morgan, who has known both defendant and codefendant Mullen for her entire life, testified that she saw the events of July 16,

1996, from her front window, which looks out onto Spaulding Avenue. She stated that she saw about 15 people outside, although she could not see what they were doing because they were over a block away. She also conceded that the distance prevented her from recognizing any of the offenders, although she asserted that she saw neither defendant nor Mullen at the scene.

Leroy Johnson testified that he had known Mullen and Townsend for at least 15 years. On July 16, 1996, a truck came "blazing" down Ohio Street. He saw a group of approximately 15 or 20 men "snatch this guy" out of the truck and start "jumping on him." He stated Townsend and Mullen were not with this group. Johnson admitted that he did not actually witness the pickup truck colliding with the parked cars on Spaulding Avenue and that although he knew the police had arrested Townsend and Mullen, he never came forward to tell the police that they were not involved.

Danette McKinley testified that defendant and Townsend are her friends. She observed the beating from Ohio between Christiana and Spaulding. At first she saw a crowd of people running down Ohio toward Spaulding. She started running along with the crowd but stopped between Christiana Street and Spaulding Avenue and saw a white man on the ground being beaten by a large group of young black men. She did not see either Townsend or Mullen at the scene of the beating. On cross-examination, she stated she did not see a crowd of people chasing the truck down Ohio Street. She also could not recall how many cars were on the street that night or the color of any of the cars. She also did not remember whether she saw some of the other witnesses who testified for defendant at the scene.

Rosalind Russell testified that she learned about the incident a couple of days later from Venus Norfleet. Russell is a close friend of Mullen's family and has known Mullen for six or eight years. She stated that Norfleet told her that she did not know why the police were harassing her and that she did not see anything. Russell, however, did not contact the police with this information. The State called Joseph Mackey, an investigator, in rebuttal, who testified that he spoke to Russell on September 15, 1997. Mackey testified that Russell told him that Norfleet had told her that she witnessed the beating.

## ANALYSIS

### I. Reasonable Doubt

■ Defendant contends that he was not proven guilty beyond a reasonable doubt. The issue of whether a defendant has been proven guilty beyond a reasonable doubt is resolved by viewing the evidence in the light most favorable to the prosecution. *People v. Hobley*, 159 Ill.

2d 272, 313 (1994). In reviewing the sufficiency of evidence, the court determines if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Batchelor*, 171 Ill. 2d 367, 376 (1996). The trier of fact is responsible for determining the credibility of the witnesses, the weight to be given their testimony, and reasonable inferences to be drawn from the evidence presented. *People v. Bofman*, 283 Ill. App. 3d 546, 553 (1996). Further, the identification of a single witness is sufficient to sustain a conviction if the witness viewed the accused under circumstances that allowed a positive identification. *People v. Green*, 298 Ill. App. 3d 1054, 1064 (1998).

A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the credibility of witnesses and the weight of the evidence. *People v. Herrera*, 257 Ill. App. 3d 602 (1994). However, a reviewing court will reverse a conviction if the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People v. Smith*, 185 Ill. 2d 532 (1999). In a bench trial it is for the trial judge to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom and to resolve any conflicts in the evidence. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). Therefore, as a reviewing court, it is our duty to carefully examine the evidence while giving due consideration to the fact that the trial court saw and heard the witnesses. *Smith*, 185 Ill. 2d at 541.

Defendant argues that Norfleet's testimony is insufficient to prove defendant guilty of first degree murder under a theory of accountability because her testimony only indicated defendant was merely present during the beating. Defendant further argues that Freeman's testimony was so contradictory that no reasonable trier of fact could convict on that testimony. We first address whether the evidence was sufficient to prove defendant guilty under a theory of accountability.

### A. Sufficiency of Evidence Under Accountability Theory

■ In Illinois, a person is legally accountable for the conduct of another if "[e]ither before or during the commission of an offense and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2(c) (West 1996). A defendant may be accountable for acts performed by another if the defendant shared the criminal intent of the principal or if there was a common criminal design, plan or purpose. *People v. Taylor*, 164 Ill. 2d 131 (1995). A common design can be inferred from the circumstances surrounding the commission of the crime, including presence during

the perpetration of the crime, maintaining a close affiliation with the co-perpetrators after the commission of the crime, and failure to report the crime. *Taylor*, 164 Ill. 2d at 141. While mere presence at the scene of a crime is not enough to render one accountable for a crime, there is no requirement that a defendant actively participate in order to be found guilty under a theory of accountability. *Taylor*, 164 Ill. 2d at 140.

In *People v. Perez*, 189 Ill. 2d 254 (2000), the Illinois Supreme Court reversed the defendant's conviction for first degree murder based on an accountability theory where the defendant was merely present at the time of a gang-related shooting and fled the scene of the crime. In *Perez*, the defendant drove by a group of people and was hailed by a member of the Maniac Latin Disciples (Disciples) gang, Anthony Rivera. As the defendant approached the group of people, Rivera asked him whether one of the men standing in the group was a member of the rival Latin Kings gang. Defendant pointed his finger at the victim. Rivera then fired five or six gunshots at the victim. The court held that while defendant was present at the scene of the crime, knew of its commission and fled the scene, the evidence was not sufficient to prove that he intentionally aided in or encouraged the crime's commission. *Perez*, 189 Ill. 2d at 268. The evidence at trial which indicated defendant sometimes associated with members of the Disciples, but did not know of the ongoing altercations between the victim and Rivera and did not know that anyone at the scene was armed was insufficient to prove defendant guilty of murder based on an accountability theory. *Perez*, 189 Ill. 2d at 268-69.

■ This rationale, however, cannot be applied to the present case. In *Perez*, the defendant walked into a situation where he did not see any signs of impending violence and he did not know Rivera, the shooter. Here, there was evidence that defendant shared the criminal intent of the group who killed the victim. Norfleet testified that defendant was with a group of 10 to 15 men running after the victim's truck. She saw one of the men pull the victim out of the truck. Norfleet testified that she watched as the group of men beat the victim. She saw codefendant Townsend kicking the victim while Mullen stood over the victim as another man beat the victim with a baseball bat. She later saw the group of people, including Mullen, walk away from the victim.

Presence during the crime without dissociating oneself from the crime, continued association with the perpetrator after the criminal act, and flight from the crime scene all serve as factors in determining a defendant's accountability. *People v. Harris*, 294 Ill. App. 3d 561 (1998). Here, defendant chased the victim, stayed during the beating,

and stood over the victim as codefendant Townsend kicked the victim while another man hit the victim with a bat. Defendant did not offer to help, he did not discourage or disapprove of the crime, he came and left with the group that actively participated in the beating and he did not report the crime. Thus, although Norfleet did not see Mullen hitting or kicking the victim, a rational trier of fact could find that defendant was accountable because he was not merely present during the beating. Defendant was part of the group who chased the victim, pulled the victim out of his truck and beat the victim. Unlike *Perez*, in this case, defendant was a part of the group engaged in violence, he shared the criminal intent of the group and participated in the common criminal design to harm the victim. Thus, the evidence was sufficient to prove defendant guilty of first degree murder under a theory of accountability.

Moreover, Freeman testified that defendant chased the victim and kicked the victim. Freeman watched as Sam Quinn pulled the driver out of the truck and began beating him. He recognized Quinn and the others, including defendant, from the neighborhood and knew they were members of the Gangster Disciples. He watched the group kick, hit and beat the driver. He saw Mullen and codefendant Townsend kick the victim "a bunch" of times. He saw the same group of people, including Mullen, walk away from the victim, leaving him bleeding in the middle of the street. Thus, Freeman's testimony provided additional evidence for the trier of fact that defendant was not only part of a common design to beat the victim, but actively participated in the beating.

## B. Sufficiency of Eyewitness Testimony

Defendant further argues that Freeman's testimony was so unreliable and impeached that a reasonable trier of fact could not convict based on his testimony. Freeman gave a recantation statement 10 months after the incident in which he stated that he did not see defendant at the scene. In his recantation, Freeman explained that he identified defendant because he confused him with Sam Quinn, defendant's cousin. Defendant argues that Freeman's signed recantation exonerates defendant from any wrongdoing or, in the alternative, undermines Freeman's credibility.

The State points out that Freeman, within hours of the crime in his first discussion with the police, unequivocally named defendant as one of the offenders whom he saw chase and kick the victim. He identified defendant two days after the incident and testified before the grand jury about the defendant's active participation in the beating of the victim. At trial, defense counsel thoroughly cross-examined Freeman regarding his May 19, 1997, recantation statement.

Defendant relies on *People v. Wise*, 205 Ill. App. 3d 1097 (1990), to support his argument that Freeman's testimony was so impeached as to render it meaningless. However, *Wise* is distinguishable. In *Wise*, before trial, the eyewitness signed two statements which stated that defendant was not involved in the robbery. The eyewitness disavowed both statements and claimed that he did not know what he signed. At trial, the witness testified that defendant grabbed him from behind in a bear hug while another man grabbed the victim's gold chain. On appeal, the court noted that although the testimony of a single witness, if positive and credible, even if contradicted, is sufficient to support a conviction, in *Wise*, the testimony of the eyewitness did not merely contain minor discrepancies but was severely impeached by inconsistencies and lack of corroborative evidence.

In this case, however, there were two eyewitnesses whose testimony was corroborated. Freeman saw defendant, codefendant and others kick the victim "a bunch of times." Although Freeman later signed a statement that recanted his earlier statements, his testimony was not so impeached as to render it incredible. He denied the truth of the recantation and explained that he was afraid of Mullen, Mullen's family and Mullen's gang affiliation. Moreover, this is not a case where a witness makes an identification months after the crime; rather, Freeman named defendant within hours of the beating. Within two days of the crime he identified defendant in a showup, and he stated that he had known the defendant from the neighborhood for 10 years. In addition, Norfleet corroborated Freeman. She stated that she had also known defendant for 10 years as one of her sister's students and from the neighborhood. She stated that she saw defendant at the scene, standing over the victim, while Townsend and another man kicked and beat him. Both Freeman and Norfleet testified that the area where the beating took place was sufficiently lighted.

Defendant further argues that Norfleet's testimony is suspect because her brother had been killed by Gangster Disciples and she wanted to retaliate against them. Norfleet was extensively cross-examined regarding this allegation and the trier of fact was in the best position to determine the credibility of Norfleet's testimony. Moreover, the testimony of both Freeman and Norfleet was corroborated in part by other witnesses. Both Freeman and Norfleet described observing the victim being beaten with objects and kicked repeatedly. Those observations were corroborated by the medical examiner, who found the victim died from trauma consistent with being struck multiple times with a blunt object and being kicked multiple times. Jose Meraz, although unable to identify the defendant, corroborated the testimony of Norfleet and Freeman by confirming the fact that 10 to 15 men

chased the victim and then beat him after pulling him from his truck. Thus, unlike the factual scenario in *Wise*, defendant was not convicted based solely on the testimony of a single impeached, uncorroborated witness.

Defendant further contends that Freeman's identification of him is unreliable because he consumed several 40-ounce bottles of beer on the night he witnessed the beating. We note the issue of identification testimony in the context of evidence sufficiency was recently addressed in *People v. Smith*, 185 Ill. 2d 532 (1999). In that case only a single witness identified the defendant as the shooter. Much of the testimony of the witness contradicted the State's more reliable occurrence witnesses who were unable to identify defendant as the shooter. Moreover, the only eyewitness to the crime admitted drug use at the time of the crime, had a motive to lie because a suspect was her sister's boyfriend, and did not notify the police until two days after the crime. Based on the deficiencies in the testimony of the single identification witness, the supreme court found insufficient evidence to support defendant's conviction. *Smith*, 185 Ill. 2d at 545.

■ Unlike the deficiencies in *Smith*, here, based on the totality of the circumstances, there was sufficient evidence of eyewitness reliability. A number of factors necessarily guide the court's determination of the reliability of identification testimony. These factors include: (1) the opportunity of the witness to observe the offender at the scene of the crime; (2) the degree of attention the witness gives to the event; (3) the accuracy of any prior identifications; (4) the level of certainty at the "identification confrontation"; and (5) the time between the crime and the identification confrontation. *People v. Slim*, 127 Ill. 2d at 307-08. Applying these factors to the identification of Mullen by Norfleet and Freeman, we note that Norfleet and Freeman had more than adequate opportunity to observe defendant as their attention was riveted for several minutes on the violent beating taking place just a few feet away from them. The lighting conditions were good. Moreover, a short period of time passed between the crime and the identification of defendant by Norfleet and Freeman. In his first discussion with police on July 17, 1996, Freeman named defendant; Norfleet also named one of the offenders. It is unclear from the record which defendant Norfleet initially named. However, following their discussion with Norfleet and Freeman, the police arrested Mullen. Both Freeman and Norfleet identified defendant two days after the incident. They both had known defendant for 10 years from the neighborhood. Both Freeman and Norfleet told the police what they saw within hours of the crime. These identifications lacked neither accuracy nor certainty. The court recognized that Freeman had been drinking, yet

found his identification reliable, noting that his testimony was corroborated by the other witnesses.

■ Finally, the trial court was under no obligation to accept the testimony of defendant's witnesses over the identification of the State's witnesses. Here, defendant's alibi was supported by the testimony of his girlfriend, his grandmother, neighbors and friends. However, the trier of fact is not required to accept alibi testimony over positive identification of an accused, particularly where the alibi testimony is provided by biased witnesses. *People v. Whitley*, 49 Ill. App. 3d 493 (1977). None of these witnesses, who were all closely associated with defendant, came forward at the time of the initial investigation. That fact can be properly considered by the trial court when evaluating credibility. *People v. Berry*, 264 Ill. App. 3d 773 (1994). Latasha Morgan observed the beating from a block away and did not notify the police even though she claimed to have recognized some of the offenders. Rosalind Russell was friends with Mullen and his family. Her testimony was contradicted by the fact she told the State's Attorney investigator that Norfleet told her that she witnessed the beating. Both Leroy Johnson and Danette McKinley contradicted other defense witnesses about how the beating occurred and events after the beating.

The alibi testimony was reasonably rejected by the trier of fact where it was provided by witnesses related to the defendant, or who had close ties to him, and who failed to come forward. Moreover, these witnesses placed the defendant one-half block from the scene during the general time period when the crime occurred. At the bench trial in this case the trial judge found the prosecution evidence credible. Based on the record we conclude there was sufficient evidence to support the trial court finding defendant guilty beyond a reasonable doubt of first degree murder.

## II. Admission of Prior Consistent Statements

■ Defendant argues the trial court improperly admitted and relied on the prior consistent statements of Norfleet and Freeman. The question of whether a defendant is prejudiced by the admission of a prior consistent statement of a witness is waived if the defendant fails to contemporaneously object and the issue is not raised in a posttrial motion. *People v. Wilson*, 229 Ill. App. 3d 80, 86 (1992). Defendant has waived the issue regarding admission of Freeman's grand jury statement by failing to object during trial and failing to raise this issue in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988). The record shows it was codefendant Townsend's attorney who objected during trial to a question regarding Freeman's prior grand jury statement. An objection from the codefendant is insufficient for

purposes of preserving an issue on appeal for defendant. *People v. Williams*, 262 Ill. App. 3d 808 (1994).

Waiver aside, the admission of evidence is within the sound discretion of the trial court and its ruling will not be disturbed unless there was an abuse of discretion. *People v. Beard*, 273 Ill. App. 3d 135, 142 (1995). Generally, the testimony of a witness may not be corroborated by proof of prior statements consistent with the trial testimony. *People v. Shum*, 117 Ill. 2d 317, 340 (1987). Prior consistent statements may not be admitted merely because a witness has been discredited or impeached. *People v. Bobiek*, 271 Ill. App. 3d 239, 244 (1995). Two exceptions to this rule are that (1) prior consistent statements are properly admitted to rebut a charge that the witness is motivated to testify falsely *or* (2) to rebut a charge that testimony is of recent fabrication. *People v. Williams*, 147 Ill. 2d 173, 227 (1991). Charges of recent fabrication and charges of a motive to testify falsely are separate exceptions to the general rule which prohibits proof of prior consistent statements. *People v. Antczak*, 251 Ill. App. 3d 709, 716 (1993). The party seeking to introduce the prior consistent statement has the burden of establishing that the statement predates the alleged recent fabrication or predates the existence of the motive to testify falsely. *People v. Deavers*, 220 Ill. App. 3d 1057 (1991). The prior consistent statement is admissible to show that the witness told the same story before the time of the alleged fabrication. *People v. Titone*, 115 Ill. 2d 413, 423 (1986). When these standards governing the admissibility of prior consistent statements are satisfied, the statements are admissible not as substantive evidence but for rehabilitation purposes. *People v. Lambert*, 288 Ill. App. 3d 450, 454 (1997).

However, statements of identification are admissible as substantive evidence to corroborate an in-court identification. *People v. Bowen*, 298 Ill. App. 3d 829, 835 (1998). Prior identification statements are admitted as provided by section 115—12 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—12 (West 1996)):

> "A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him."

We first address the defendant's claims that Freeman's prior consistent statements to the grand jury were not admissible because they did not rebut a charge of recent fabrication or a charge that the witness was motivated to testify falsely. The State argues that the grand jury statements were properly admitted to rebut the charge of recent fabrication or as statements of identification. During direct examina-

tion, Freeman testified that he saw defendant kicking the victim. On cross-examination, defense counsel established that, in the recantation signed five months before trial, Freeman stated he did not see defendant kick the victim. Defense counsel cross-examined Freeman as to the truth of his statement and argued that Freeman in his recantation statement indicated it was Sam Quinn, not defendant, who committed the crime. On redirect, the State rehabilitated Freeman with his grand jury testimony. Codefendant Townsend's attorney objected. In response to the objection, the trial court referenced the cross-examinations conducted by the attorneys for both Mullen and Townsend and stated that both attorneys indicated through their cross-examinations that their theory was that Freeman's trial testimony was fabricated. The trial court stated as follows:

"You indicated through your cross *** you're trying to indicate that that's a lie. I think the State has a right to rehabilitate and show it's not a fabrication."

The State was then allowed to redirect Freeman with prior consistent statements he made when he testified before the grand jury before the recantation. Thus, the record shows that, in admitting the grand jury testimony, the trial court concluded that the testimony was offered as a prior consistent statement to rebut a charge of recent fabrication.

Defendant now claims that the admission of the prior consistent statement was error because the defense did not charge or imply that Freeman was motivated to testify falsely or that his testimony was recently fabricated. We note the defense did not object to the admission of Freeman's prior consistent statement to the grand jury. There was no objection made to the use of the grand jury statement by the prosecution to rebut the defense inference that Freeman's testimony was a recent fabrication. Here, the State offered a prior consistent statement to rebut a general charge of recent fabrication, which was not premised on a specific motive. See *People v. Antczak*, 251 Ill. App. 3d 709, 715 (1993). Defendant's brief points out that "defense counsel did not elicit testimony about Freeman's prior contradictory statement in order to point to a specific recent event or specific incentive, such as police pressure, that would have motivated Freeman to lie at trial. Instead, Freeman's credibility was impeached in more general terms, namely that he could not be trusted to tell the truth."

That argument suggests the recantation was offered by the defense merely to impeach Freeman; however, the record indicates that the defense took the position that the recantation not only impeached Freeman, but exonerated defendant because the recantation was the truth. Once the defense indicated that Freeman's recantation was true, the defense went beyond impeaching Freeman's credibility with

the recantation and raised the inference that Freeman's direct testimony was a lie, a fabrication. Although no motive for the fabrication was developed by the defense, that fact should not preclude the State from rebutting the general charge of fabrication with Freeman's prior consistent statement to the grand jury. *Antczak*, 251 Ill. App. 3d at 715-17. We note that, in questioning Freeman at trial about the recantation, defense counsel charged that the recantation statement was the truthful version of the events Freeman observed the night of the murder, as demonstrated by the following questions asked of Freeman by Mullen's attorney regarding the recantation:

"Q. When we were at your home taking this statement was anybody threatening you then?

A. No.

Q. Why were you nervous?

A. I don't know.

Q. Because you were talking to a lawyer?

A. Yes.

Q. And you wanted to make sure you were telling the truth, correct.

A. Right."

Defense counsel then argued that Freeman gave the recantation when he realized that the man he saw kicking the victim was Sam Quinn and not defendant. The defendant's theory of the case went beyond mere impeachment of Freeman with the recantation. The essence of the defense case was that Freeman told the truth when he gave the recantation statement in May 1997 identifying Sam Quinn as the offender and stating that he did not see defendant kick the victim. Under that theory, defendant raised the direct inference that Freeman's testimony at trial, where he identified Mullen as one of the offenders and stated that he did, in fact, witness defendant kick the victim, was a recent fabrication not premised on a specific motive. As such, the prior consistent grand jury statement, which predated the trial testimony and predated the recantation, was properly allowed to rebut the inference that the trial testimony was a recent fabrication. *People v. Williams*, 147 Ill. 2d 173, 227 (1991).

The defense wanted the trier of fact to reject Freeman's testimony on direct examination that defendant beat the victim because Freeman identified Sam Quinn in his recantation. We believe Freeman's grand jury statement was admissible to rehabilitate Freeman against this general charge of recent fabrication. *Antczak*, 251 Ill. App. 3d at 717-18. The defense theory was that Freeman's recantation not only impeached Freeman, but exonerated the defendant by naming Quinn. The fact that the defense used the recantation for more than impeach-

ment is apparent not only from the record, but from the defense brief, which argues that "Freeman's signed recantation exonerates the defendant from any wrongdoing, or at the very least, demonstrates what little regard Freeman has for the truth."

Based on the record, including defense counsel's cross-examination of Freeman, together with her closing argument, we reject defendant's argument that use of the recantation was "impeachment by prior inconsistent statement pure and simple." We find the recantation was offered not only as impeachment but as the true version of the murder raising the inference that Freeman's direct testimony was a recent fabrication. Mindful of the standards governing the admissibility of prior consistent statements, on this record we are unable to say that in admitting the statement the court abused its discretion. *People v. Titone*, 115 Ill. 2d 413, 423 (1986).

Defendant next argues that the prior-consistent-statement testimony by Freeman and Norfleet of what they told the police during the investigation was inadmissible as it served to bolster their credibility. Although defendant does not cite to specific instances of prior consistent statements, a review of the record indicates that Norfleet testified that when she went to the police station she identified defendant and codefendant. She also testified at trial that she told the police officers what she saw defendant do on the night of the beating. Notably, however, Norfleet did not disclose the substance of her conversation with the police with regard to defendant. The general rule that a witness may not testify regarding a prior consistent out-of-court statement made by that witness does not apply to statements of identification. *People v. Beals*, 162 Ill. 2d 497, 507-08 (1994). Thus, the testimony of Norfleet's identification of defendant was properly admitted pursuant to section 115—12 of the Code of Criminal Procedure (725 ILCS 5/115—12 (West 1996)).

■ Defendant also contends that the prior consistent statements by Freeman regarding what he observed were improper. Defendant points out that Freeman testified at trial, "I told the police I saw a bunch of guys beating up a guy after they pulled him out of the truck." Defendant's attorney objected to this statement and the trial court sustained the objection. Thus, Freeman was precluded from testifying as to what he told the police. Freeman was then asked whether he went to the police station the day after the incident. He stated that he did and that he identified the defendant. The State then asked Freeman whether the police asked him what he saw defendant do on the night of the incident. Freeman answered that he told them what he saw. Freeman was then asked by the prosecutor, "What did you tell them?" Defense counsel objected and the trial court sustained the

objection. After the trial court sustained the objection as to the prior consistent statement, Freeman went on to testify that the next day, July 19, 1996, he identified defendant and codefendant at the police station. A review of the record indicates that the testimony that was admitted was Freeman's prior identification of defendant, which was proper under section 115—12 of the Code of Criminal Procedure (725 ILCS 5/115—12 (West 1996)).

■ Finally, defendant argues that the trial court erroneously viewed Freeman's prior consistent statement to the police as bolstering his credibility. Defendant contends that the trial court considered matters outside the record when reaching its decision. The record shows that the trial court sustained two objections to questions that sought to elicit prior consistent statements of what Freeman told the police. There is no indication that the trial court used those statements after sustaining the objections in reaching its decision. Further, as discussed earlier, the trial court considered the prior grand jury testimony, which was properly admitted in evidence to rebut the inference of a recent fabrication. *People v. Lambert*, 288 Ill. App. 3d 450 (1997). Therefore, the only remaining prior consistent statements at trial were those of prior identification in which Freeman testified that he spoke to the police after the incident and identified defendant. For the reasons previously discussed, prior identification testimony was properly admitted and considered by the trial court. 725 ILCS 5/115—12 (West 1996).

As a reviewing court, we should not encroach upon the trier of fact's function of weighing credibility and assessing the evidence presented. *People v. Morgan*, 112 Ill. 2d 111, 136 (1986). Here, the trial court chose to believe Freeman's testimony at trial over the recantation testimony. However, the trial court's analysis did not end there; the trial court also looked at the testimony of the other identification witness, Venus Norfleet, and stated that it corroborated Freeman. Moreover, the trial court did not find the defense witnesses credible and stated, "I don't believe the alibis of either of these two [defendants] *** I think that the other witnesses who have testified *** have been impeached in major areas, much more in my mind major areas than either of the two witnesses who say they saw these two men participate." Thus, there is no indication that the trial court considered matters outside the record as argued by defendant. For the reasons previously discussed, the prior consistent statements of Freeman and Norfleet were properly admitted and considered by the trial court. We find no abuse of discretion by the trial court in admitting this evidence.

### III. Exclusion of Testimony of Rosalind Russell

■ Defendant next argues that the trial court erred in striking portions of Rosalind Russell's testimony regarding what Venus Norfleet told her. Defendant maintains that Russell's testimony about Norfleet's prior inconsistent statement, made a few days before the trial, was not a violation of the discovery rules. Although defendant objected during trial, the issue was never raised in a posttrial motion. *People v. Williams*, 262 Ill. App. 3d 808 (1994). Waiver aside, we find that the trial court did not abuse its discretion in striking a limited portion of Russell's testimony.

Illinois Supreme Court Rules 413(d)(i) and (e) state in relevant part:

> "[D]efense counsel shall inform the State of any defenses which he intends to make at a hearing or trial and shall furnish the State with the following material and information within his possession ***:
>
>> (i) the names and last known addresses of persons he intends to call as witnesses, together with their relevant written or recorded statements, including memoranda reporting or summarizing their oral statements, and record of prior criminal convictions known to him[.]
>
> * * *
>
> (e) Additional Disclosure. Upon a showing of materiality, and if the request is reasonable, the court in its discretion may require disclosure to the State of relevant material and information not covered by this rule." 107 Ill. 2d Rs. 413(d)(i), (e).

Illinois Supreme Court Rule 415(g)(i) states:

> "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." 107 Ill. 2d R. 415(g)(i).

The trial court has discretion to impose a sanction for violation of criminal discovery rules. *People v. Foster*, 271 Ill. App. 3d 562 (1995). Criminal discovery rules provide a variety of sanctions that may be imposed for failure to disclose evidence; the court may order disclosure of the material, exclude the evidence, grant a continuance or "enter such other order as it deems just under the circumstances," including dismissal. *People v. Heinzmann*, 232 Ill. App. 3d 557, 560 (1992).

Although our courts have expressed a preference for recess or continuance as sanctions for discovery violations, the determination of the appropriate sanction is a matter within the discretion of the circuit

court. *People v. Johnson*, 262 Ill. App. 3d 781 (1994). The standard of review for a discovery sanction is whether the trial court abused its discretion. *People v. Weaver*, 92 Ill. 2d 545, 559 (1982). In fashioning an appropriate sanction, the trial court must evaluate the strength of the undisclosed evidence, the likelihood that prior notice could have helped discredit the evidence and the willfulness of the party in failing to disclose. *Heinzmann*, 232 Ill. App. 3d at 560.

In the present case, Russell testified that, a few days after the crime, Norfleet told her that she did not know what happened and that she did not see defendant. She further testified that Norfleet told her that she did not know why the police kept harassing her. Russell was then asked whether she had any further conversations with Norfleet other than the one a few days after the crime. Russell stated that a few days prior to the trial she had a second conversation with Norfleet. She testified that Norfleet told her that an assistant State's Attorney came over to her house and asked Norfleet whether she knew Russell. Russell then stated that Norfleet asked Russell if Russell had told defendant's attorney what Norfleet had told Russell in their earlier conversation. Russell replied that she had. Norfleet then told Russell that she had also told the assistant State's Attorney that she did not see defendant do anything and that she did not know why they were asking her questions about something she knew nothing about. At this point, the State objected on the basis that this second conversation with Russell was never tendered in discovery. Defense counsel replied:

"DEFENSE COUNSEL: This witness was not here yesterday.

WITNESS: No, I wasn't.

THE COURT: Why doesn't it work both ways? The last conversation, supposedly what happened a couple of days ago, will be stricken.

DEFENSE COUNSEL: The first I learned of it was just when I was prepping her in the hallway. There were no other people present for the conversation so there was nothing to tender to the state. They spoke to this witness. They had an investigator speak to this witness and could have questioned her about whatever. They have had access to her.

THE STATE: September 15, [1997,] is the date she was interviewed by our office based on the first statement tendered to us."

The trial court struck the portion of the conversation that had not been tendered to the State and said, "You still have an obligation ***. *** It is a two-way street, it is stricken. Fair is fair. It is fair for both sides."

Defendant argues that defense counsel was under no obligation to

tender Russell's testimony about the second conversation because supreme court rules require disclosure to the State only of relevant written or recorded statements. Under this rationale, no oral statement would ever have to be tendered in discovery if the attorney decides not to reduce it to writing. The fact that the statement was not written or recorded does not automatically serve to preclude it from being discoverable material. While subsection (i) of Supreme Court Rule 413 requires defense disclosure of written or recorded statements, section (e) notes that the court in its discretion may require disclosure of relevant material not covered by the rule. 107 Ill. 2d R. 413(e). The fact that Russell testified that not only did Norfleet admit to her that she did not see defendant commit the crime after it occurred but that she claimed to have made a similar statement to the assistant State's Attorney a few days prior to the trial impeaches a key prosecution witness and is material and relevant.

The defendant further argues that there was no duty to disclose the statement because it was a statement of the prosecution's own witness. That argument was rejected in *People v. Carr*, 149 Ill. App. 3d 918 (1986), where the court found the defense had a duty to disclose a statement which impeached a prosecution witness, regardless of the fact that the statement was made by a prosecution witness. *Carr*, 149 Ill. App. 3d at 929. Here, the fact the statement was allegedly made by a prosecution witness does not make it any less relevant and material. We conclude the defense had a duty to disclose; however, based on the totality of the circumstances, including the recent discovery of the statement by defense counsel when preparing the witness in the hallway immediately prior to calling her to testify, we do not find the failure of the defense to disclose was a willful violation of the discovery rules.

Defendant further argues that, even if this court finds that a discovery violation did occur, it was unfair to the defendant for the court to exclude Russell's testimony. However, defendant has failed to show that he was prejudiced by the trial court's limited sanction of excluding the second statement. In fact, the record reflects that the second statement was basically cumulative of the first statement. In the first conversation, Russell testified that Norfleet told her that she did not see anything. In the second conversation, days before the trial, Russell testified that Norfleet essentially made the same statement. The only distinguishing factors between the two statements were the time at which they were made and the persons to whom they were made. We note that the trial court's sanction was limited, narrowly tailored to a specific statement and did not prevent the defense from fully questioning Norfleet on other matters. The defense was allowed

to fully cross-examine Norfleet about an alleged motive for her testimony and about prior statements to Russell inconsistent with her trial testimony.

Exclusion of the evidence is within the sound discretion of the trial court and will only be reversed on a showing of prejudice to the defendant. *People v. Bock*, 242 Ill. App. 3d 1056, 1068 (1993). Here, defendant has not demonstrated that he was prejudiced by the sanction since the first statement was admitted and essentially contained the same substance as the second statement. Based on the record we conclude there is no reasonable probability that the outcome of this bench trial would have been different had the statement been admitted and therefore the defendant cannot establish prejudice as a result of the limited sanction which was imposed.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

TULLY and GALLAGHER, JJ., concur.